GREENE, AUDITOR, ET AL., CONSTITUTING THE BOARD OF VALUATION AND ASSESSMENT FOR THE STATE OF KENTUCKY, ET AL. v. LOUISVILLE & INTERURBAN RAILROAD COMPANY.

SAME v. LOUISVILLE RAILWAY COMPANY.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

Nos. 617, 618. Argued January 16, 17, 18, 1917.—Decided June 11, 1917.

Equity has jurisdiction to enjoin unlawful tax proceedings, which cloud the plaintiff's title and threaten irreparable injury and a multiplicity of suits.

The principle settled in *Ex parte Young*, 209 U. S. 123, to the effect that a suit to restrain state officials from enforcing an unconstitutional state statute in violation of plaintiff's rights and to his irreparable damage is not a suit against the State, applies also when the statute itself is constitutional but the attempted administration of it is not.

In a case in which the jurisdiction of the District Court is properly invoked upon a substantial controversy arising under the Constitution of the United States, the jurisdiction of that court, and of this court on appeal, extends to the determination of all questions involved, including questions of state law, irrespective of the disposition that may be made of the federal question and of whether it be found necessary to decide it at all.

Where the relief to which plaintiff might be entitled under the Fourteenth Amendment is the same as that allowed him by the federal court upon a proper construction and application of the state constitution and laws, the question whether the acts complained of violate the Amendment need not be decided.

Under the so-called franchise tax provisions of Kentucky (Ky. Stats., §§ 4077–4079) relating to railroad and other corporations exercising special or exclusive privileges or franchises, what is termed the "capital stock of the corporation" (§ 4079) includes its entire property,

tangible and intangible, and what is termed a "franchise tax" is nothing else than a tax upon the intangible property of the corporation in Kentucky.

*Semble*, that no provision is made by the Kentucky statutes for taxing franchises under §§ 174 and 181 of the state constitution.

The provision in § 182 of the Kentucky Constitution, permitting the General Assembly to provide by law "how railroads and railroad property shall be assessed, and how taxes thereon shall be collected," relates only to the mode of assessment and collection and does not authorize a departure from the· uniformity in valuation and rate required by §§ 171 and 174.

Discrimination resulting from an assessment.of the intangible property of a railroad corporation by the Board of Valuation and Assessment at 75 per cent. of its actual value while the property of individuals and other classes of corporations, taxed at the same rate, is generally and systematically assessed by other and independent taxing authorities of the State at not more than 60 per cent. of actual value, is violative of the provisions of the Kentucky Constitution requiring uniform taxation in proportion to value and an identical rate as between corporate and individual property (§§ 171, 174); and this has been recognized by the Supreme Court of the State.

A decision of the state Supreme Court holding that such discrimination is not subject to correction in the courts of the State, and that the equality and uniformity provisions of the state constitution may be enforced only by selection of proper assessing officers, is not binding upon the federal courts.

The courts of the United States, their jurisdiction being properly invoked, may afford relief against discriminatory state taxation, contravening the state constitution, when the discrimination results from divergent action of different assessing boards whose assessments are not subject to any process of equalization established by the State, and where the diverse results are the outcome, not of express agreement, but of intentional, systematic and persistent undervaluation by one body of officials, presumably known to and ignored by the other body, so that, in effect, the two bodies act in concert.

Sections 171 and 174 of the Constitution of Kentucky require uniform taxation according to value, and an identical rate as between corporate and individual property; and the provision of § 174 that "all corporate property shall pay the same rate of taxation paid by individual property" means that not only the percentage of the rate, but the basis of the valuation, shall be the same.

Uniformity in taxing implies equality in the burden of taxation; and this equality cannot exist without uniformity in the basis of assessment, as well as in the rate of taxation.

The principal if not the sole reason for adopting "fair cash value" as the standard for valuations is as a convenient means of securing equal taxation, and, since, when the standard is systematically departed from in respect of certain classes of property, its observance in respect of others (the tax rate being uniform) would serve to frustrate its very object, it follows that, in such cases, the duty to assess at full value is not supreme but yields to the duty to avoid discrimination.

Section 162, Kentucky Statutes, does not afford an adequate legal remedy against discriminatory assessments for both state and local taxes, because, as construed by the Kentucky Court of Appeals, it does not authorize correction of erroneous assessments, and also because it applies only to state, and not to local, taxes. *Singer Sewing Machine Co.* v. *Benedict*, 229 U. S. 481, distinguished.

When the bill seeks relief as to state and local taxes based on the same assessment, and an adequate legal remedy exists as to the former class only, equity will retain and dispose of the entire case, doing justice completely and avoiding multiplicity of suits.

A railroad company whose intangible property is assessed by the Board of Valuation and Assessment, and which is subjected to discrimination through undervaluation of other property by county assessors, is not afforded an adequate remedy through §§ 4115–4120, 4123, Ky. Stats., providing for readjustment of the latter class of assessments through the County Board of Supervisors.

Affirmed.

THE cases are stated in the opinion.

*Mr. Charles Carroll, Mr. Marvel M. Logan,* Attorney General of the State of Kentucky, and *Mr. John L. Rich* for appellants.

*Mr. Alexander Pope Humphrey,* with whom *Mr. Edward P. Humphrey* was on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

These are companion cases involving similar questions, were argued together, and may be disposed of in a single

opinion. Appellees are corporations organized under the laws of the State of Kentucky, one of which (the Louisville & Interurban Railroad Company) operates, as a common carrier, passenger and freight lines of railroad in three of the counties of that State and in various municipalities and taxing districts in those counties; while the other (the Louisville Railway Company) operates, as a common carrier, passenger and freight lines of street railway in the City of Louisville and in Jefferson County outside of that city. They filed their several bills of complaint in the District Court against Henry M. Bosworth and others, then constituting the Board of Valuation and Assessment of the State of Kentucky (Bosworth being also Auditor of Public Accounts), and against the Attorney General of the State and his assistants, suing them all both individually and in their official capacities, for an injunction to restrain steps looking to the certification and enforcement of what are called "franchise taxes" attempted to be assessed upon the respective complainants for the year 1915 under § 4077 and succeeding sections of the Kentucky Statutes, upon the ground of discrimination in the valuation of the franchises; they having been assessed, as alleged, on the basis of 75 per cent. of actual values, while taxable property in general was assessed systematically and intentionally at not more than 52 per cent. of actual values. There being no diversity of citizenship, the jurisdiction of the District Court was invoked, under the first paragraph of § 24, Jud. Code, upon the ground that the suits arose under the "due process" and "equal protection" clauses of the Fourteenth Amendment of the Constitution of the United States and that the matter in dispute in each case was in excess of the jurisdictional amount. Plaintiffs also relied upon certain provisions of the constitution of the State that require uniform taxation of property according to value and at the same rate for corporate as for individual property. By supplemental bills

the successors in office of the original defendants were made parties, in both their individual and official capacities. In each case there was a motion to dismiss, equivalent to a general demurrer to the bill, upon the following grounds: (1) That there was no federal question involved, and therefore the court was without jurisdiction; (2) that the bills stated no cause of action under the laws of the State or of the United States; (3) that the plaintiffs had an adequate remedy at law; (4) that the bills showed no equity on their face; and (5) that the suits were suits against the State of Kentucky. After a hearing, the court overruled these motions, defendants declined to plead further and made no objection to the submission of the cases for final decrees, the allegations of the bills not being denied were taken as true, and final decrees were made granting relief against the enforcement of the disputed assessments, and restraining the imposition of franchise taxes upon plaintiffs for the year 1915 based on assessments of their franchises at greater values than those conceded in the respective bills of complaint, which were 60 per cent. of actual values. The court, in reaching this conclusion, followed its own previous decisions in *Louisville & N. R. Co.* v. *Bosworth,* 209 Fed. Rep. 380; 230 Fed. Rep. 191. Defendants appealed directly to this court, under § 238, Jud. Code.

The cases were submitted here at the same time with cognate cases this day decided, viz.: Nos. 778 and 779, *Louisville & Nashville R. R. Co.* v. *Greene, post,* 522, and Nos. 642-645, *Illinois Central R. R. Co.* v. *Greene, post,* 555.

In the present cases, the assignments of error and the argument for appellants are based upon the refusal to dismiss the bills of complaint, no criticism being made as to the particular relief granted by the final decrees.

The bills are substantially identical in form, and an outline of the one filed by the Louisville & Interurban Railroad Company (No. 617) will suffice. Following a prefatory statement of jurisdictional matters and a de-

scription of the parties, it avers in substance that the State Board of Valuation and Assessment, having ascertained by a process not here criticised what, in their judgment, was the fair cash value of plaintiff's "capital stock," took 75 per cent. of the result, and thus fixed the valuation of the capital stock for the purposes of the assessment for the year 1915 at $2,250,000; deducted therefrom the amount of plaintiff's tangible property assessed for state taxes—$813,619—thus fixing the value of the "franchise" at $1,436,381; and ascertained the state taxes thereon as follows: state tax, generally, at 50 cents, $7,181.90; state road tax, at 5 cents, $718.19; a total of $7,900.09. That plaintiff protested, but to no avail. That the assessment subjects plaintiff to state taxes upon the whole of its capital stock, and to county taxes in the three counties on proportionate parts of it, and to additional taxes in the cities and other municipalities and taxing districts through which its railroad runs. Plaintiff avers that for many years past, including the taxing year 1914–1915, the taxes for which are here in controversy, the local assessors and other assessing officers of the State of Kentucky have habitually, intentionally, systematically, and generally assessed the property of individuals and of corporations within their sphere of duty, comprising 80 per cent. of the total taxable property, at not exceeding 52 per cent. of its fair cash value, estimated at the price which it would bring at a fair and voluntary sale; that the fact of such systematic assessment upon that basis annually for many years past has been a matter of public notoriety in the State; "whereas the said Bosworth, Rhea and Crecilius, acting as the State Board of Valuation and Assessment, after ascertaining what, in their judgment, was the fair cash value of plaintiff's capital stock, reduced said value only to the extent of taking 75 per cent. thereof, instead of taking 52 per cent., the average rate applied by assessing officers to the vast body of property in this State." It is

averred that Bosworth, Rhea and Crecilius have denied to plaintiff the benefit of equalization, and that thereby plaintiff has been deprived of its property without due process of law, and denied the equal protection of the laws, in violation of the Fourteenth Amendment and the constitution and laws of the State; that plaintiff has paid the state and county taxes upon its tangible property for the year in controversy so far as they have been demanded, and also has paid the state taxes upon its franchise as arrived at by taking the value of its capital stock and taking 60 per cent. of such valuation and deducting therefrom the valuation of plaintiff's tangible property; that Bosworth, Rhea, and Crecilius, unless enjoined, will certify to the county clerks of the three counties mentioned the amounts claimed to be due to said counties and the taxing districts thereof by reason of the valuation they have assumed to make as above stated; the county clerks will thereupon certify said assessments respectively to the tax collectors for the said counties and the taxing districts therein for collection; and said collecting officers will proceed to make collections and to institute unwarranted, vexatious, and multitudinous suits and proceedings at law against plaintiff; that unless enjoined the said Bosworth or his deputy will enter in account with the Treasurer of the State the amount of taxes based upon the valuation aforesaid, and the said Attorney General and his assistants will institute civil or penal actions or procure indictments against plaintiff based upon its supposed delinquency in the payment of taxes; and that the unauthorized and illegal valuation constitutes a cloud and, as claimed by defendants, constitutes a lien upon plaintiff's property in the Commonwealth, and unless defendants are enjoined numerous and vexatious suits will be instituted to enforce or foreclose such lien. There is an appropriate prayer for injunction and for general relief.

It does not appear, from any express averment in the

bills, that other property-owners have been subjected to discrimination precisely like that of which plaintiffs complain; but the entire argument for defendants, in these cases and others argued with them, proceeds upon the theory that the Board of Valuation and Assessment treated all taxpayers alike over whom they had jurisdiction; hence, it is fair to assume that plaintiffs' franchises were assessed on the same basis of valuation applied by the Board to other property generally that came within the range of their official duty.

(1) It is convenient to state at this point what, indeed, is not controverted, that, if the suits be otherwise maintainable, the last-mentioned averments of the bills show sufficient special grounds for invoking the equity jurisdiction, under the rule established by repeated decisions of this court. *Dows* v. *City of Chicago*, 11 Wall. 108, 110, 112; *Hannewinkle* v. *Georgetown*, 15 Wall. 547; *Union Pacific Railway* v. *Cheyenne*, 113 U. S. 516, 525, 526; *Ohio Tax Cases*, 232 U. S. 576, 587.

(2) A fundamental contention of appellants is that the present actions, brought to restrain them in respect of the performance of duties they are exercising under the authority of the State of Kentucky, are in effect suits against the State. Questions of this sort have arisen many times in this court, but the matter was set at rest in *Ex parte Young*, 209 U. S. 123, 150, 155, where it was held that a suit to restrain a state officer from executing an unconstitutional statute, in violation of plaintiff's rights and to his irreparable damage, is not a suit against the State, and that "individuals who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

In repeated decisions since *Ex parte Young*, that case has been recognized as setting these questions at rest. *Western Union Telegraph Co.* v. *Andrews*, 216 U. S. 165, 166; *Herndon* v. *Chicago, Rock Island & Pac. Ry. Co.*, 218 U. S. 135, 155; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 621; *Home Telephone & Telegraph Co.* v. *Los Angeles*, 227 U. S. 278, 293; *Truax* v. *Raich*, 239 U. S. 33, 37. And see *Hopkins* v. *Clemson Agricultural College*, 221 U. S. 636, 642–644.

The principle is not confined to the maintenance of suits for restraining the enforcement of statutes which as enacted by the state legislature are in themselves unconstitutional. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 390, was a case not of an unconstitutional statute, but of confiscatory, and therefore unconstitutional, action taken by a state commission under a constitutional statute. The court, by Mr. Justice Brewer, said: "Neither will the constitutionality of the statute, if that be conceded, avail to oust the Federal court of jurisdiction. A valid law may be wrongfully administered by officers of the State, and so as to make such administration an illegal burden and exaction upon the individual. A tax law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid tax law may so act under it in the matter of assessment or collection as to work an illegal trespass upon the property rights of the individual." In *Raymond* v. *Chicago Union Traction Co.*, 207 U. S. 20, 38, the court upheld the right of action in a federal court to restrain the collection of taxes that had been assessed at a different rate and by a different method from that employed with respect to other tax-payers of the same class, in defiance of the provisions of a constitutional statute that required equalization, and also in denial of the equal protection of the laws within the meaning of the Fourteenth Amendment.

(3) The contention of plaintiffs, set forth in their respective bills of complaint, that the action of the Board of Valuation and Assessment in making the assessments under consideration and the threatened action of defendants in respect of carrying those assessments into effect constituted action by the State, and if carried out would violate the equal protection provision of the Fourteenth Amendment, presents, without question, a real and substantial controversy under the Constitution of the United States, which (there being involved a sum and value in excess of the jurisdictional amount) conferred jurisdiction upon the federal court, irrespective of the citizenship of the parties. This being so, the jurisdiction of that court extended, and ours on appeal extends, to the determination of all questions involved in the case, including questions of state law, irrespective of the disposition that may be made of the federal question, or whether it be found necessary to decide it at all. *Siler* v. *Louisville & Nashville R. R. Co.*, 213 U. S. 175, 191; *Ohio Tax Cases*, 232 U. S. 576, 586.

(4) Taking up first the question of state law, we should at the outset briefly consider the pertinent provisions of the constitution and laws of the State. By § 171 of the constitution it is prescribed: "The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws." By § 172: "All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values for taxation, who shall commit

any willful error in the performance of his duty, shall be deemed guilty of misfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished, as may be provided by law." By § 174: "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this Constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises." Section 181 provides as follows: "The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax;" etc. And § 182 declares: "Nothing in this Constitution shall be construed to prevent the General Assembly from providing, by law, how railroads and railroad property shall be assessed and how taxes thereon shall be collected."

Under statutory provisions, property is valued for purposes of taxation, both state and local, in the following manner: All property in the State, real and personal, tangible and intangible, except the property of railroads, the franchises of certain corporations, shares of stock in banks, and distilled spirits, is assessed by county assessors, subject to the review of county boards of supervisors and a State Board of Equalization. Tangible railroad property is assessed by the State Railroad Commission. Bank shares and distilled spirits are assessed by the Board of Valuation and Assessment, composed of the Auditor of Public Accounts, the Treasurer of State, and the Secretary of State. And, by § 4077, Ky. Stats., it is provided: "Every railway company or corporation . . . also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any

public service, shall, in addition to the other taxes imposed
on it by law, annually pay a tax on its franchise to the
State, and a local tax thereon to the county, incorporated
city, town or taxing district, where its franchise may be
exercised." The values of such franchises (except as to
turnpike companies, otherwise provided for), are to be
fixed by the Board of Valuation and Assessment. By
§ 4078, verified statements are to be delivered annually
to the Auditor showing certain facts respecting the com-
pany, including the amount of capital stock, with its par
and real value, and the highest price at which it was sold
within twelve months preceding, the amount of surplus
funds and undivided profits, the value of all other assets,
the amount of indebtedness, the gross or net earnings or
income, the amount and kind of tangible property in the
State, the fair cash value thereof estimated at the price
it would bring at a fair voluntary sale, and such other facts
as the Auditor may require. Section 4079 provides that
"where the line or lines of any such corporation, company
or association extend beyond the limits of the State or
county," the statement shall, in addition to other facts,
show the length of entire lines operated, owned, leased or
controlled in the State and in each county, incorporated
city, town, or taxing district, and the entire line operated,
etc., elsewhere. There is a proviso that the Board, from
the statement furnished to it by the corporation, and from
such other evidence as it may have, is to "fix the value
of the capital stock of the corporation . . . and from
the amount thus fixed shall deduct the assessed value of all
tangible property assessed in this State, or in the counties
where situated. The remainder thus found shall be the
value of its corporate franchise subject to taxation as afore-
said." [1] It has been held by the Kentucky Court of Ap-

_____

[1] The particular method of fixing the value of "capital stock" and
of "corporate franchise" is not in issue in the present cases. The Dis-
trict Court, in *Louisville & N. R. Co.* v. *Bosworth*, 209 Fed. Rep. 380,

peals, and by this court, that the "capital stock of the corporation," here referred to, includes its entire property, of every kind and description, tangible and intangible, and that what is called a "franchise tax" is nothing else than a tax upon the intangible property of the company in Kentucky. *Henderson Bridge Co.* v. *Commonwealth*, 99 Kentucky, 623, 639, 641; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150, 154; *Adams Express Co.* v. *Kentucky*, 166 U. S. 171, 180; *Louisville Tobacco Warehouse Co.* v. *Commonwealth*, 106 Kentucky, 165, 167; *Marion National Bank* v. *Burton*, 121 Kentucky, 876, 888. In view of these decisions, no serious attempt is made to sustain the assessments in question as a taxation of franchises, under § 174 or 181 of the constitution. There seems to be no provision of law for taxing franchises under either of those sections. *Marion National Bank* v. *Burton*, 121 Kentucky, 876, 885.

To recapitulate: Real estate and personal property of individuals and of non-franchise corporations are assessed by the county assessors, both for state and county purposes; tangible railroad property by the Railroad Commission; bank shares, distilled spirits, and corporate franchises by the Board of Valuation and Assessment. It is important to be observed that the latter board has no authority or control over the actions of the county assessors, the county boards of supervisors, or the State Board of Equalization; and, on the other hand, these officials have no authority or control over the actions of the Board of Valuation and Assessment. Nor is there any statutory

409–411, reading §§ 4077–4079 together, seems to have considered that the method prescribed by the proviso in § 4079 was applicable to all public service corporations organized in Kentucky, including those which operate and conduct their business and have their property wholly in that State. And this appears to have been the view of the Kentucky Court of Appeals in *Louisville Railway Co.* v. *Commonwealth*, 105 Kentucky, 710, 714.

provision for equalizing assessments, as between the property which is assessed by the county assessors and that which is assessed by the Railroad Commission and the Board of Valuation and Assessment.

It hardly is open to serious dispute that if the legislature had confided to a single body the determination of the basis of assessment of the real estate and personal property of individuals and non-franchise corporations, on the one hand, and of the tangible and intangible property of public service corporations, on the other, a valuation of property of the latter class on the basis of 75 per cent. of its actual value, while property of the former class was assessed systematically at 52 per cent., or not more than 60 per cent., of its actual value, would be inconsistent with the sections we have quoted from the Kentucky Constitution. For the provision of § 182, permitting the General Assembly to provide by law "how railroads and railroad property shall be assessed, and how taxes thereon shall be collected," relates merely to the *mode* of assessment and collection, and manifestly does not permit a departure from the requirements of uniform taxation in proportion to value and an identical rate as between corporate and individual property, contained in §§ 171 and 174. The latter section permits the General Assembly to provide for taxation based on income, licenses, or franchises. But, as already stated, at least at the time these suits arose, there was no provision of law for a taxation of franchises in any other sense than that already explained. *Marion National Bank* v. *Burton*, 121 Kentucky, 876, 885.

The fact should be emphasized that the Kentucky court of last resort, far from holding that discrimination such as is here complained of is in accord with the constitution and laws of the State, has recognized distinctly that it is not; but has felt constrained to hold that, under circumstances similar to those of the present cases, there is no redress in the courts of the State; and that the constitu-

tional provisions for equality and uniformity are capable of being put into execution only through the selection of proper assessing officers. *Louisville Railway Co.* v. *Commonwealth*, 105 Kentucky, 710, 719. This, while admitting the wrong, merely denies judicial relief, and is not binding upon the federal courts.

In *Cummings* v. *National Bank*, 101 U. S. 153, the bank brought its bill in equity in a circuit court of the United States to enjoin the collection of a tax assessed against the shares of its stockholders, not because of inconsistency with the act of Congress relating to the taxation of such shares (§ 5219, Rev. Stats.), but upon the ground of a violation of the constitution and laws of the State of Ohio, which required the taxation of all moneys, credits, and investments, and also all real and personal property, to be by a uniform rule and according to its true value in money. The Supreme Court of the State (*Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. 1, 15) had held that they required uniformity not only in the rate of taxation but also in the mode of the assessment upon the taxable valuation. But the legislature had adopted a system of valuation under which there were different bodies acting independently of one another in regard to different classes of property in the process of estimating values for taxation, with one board of equalization having charge of the valuation of the real estate of the whole State once in every ten years, another having charge of the valuation of railroad property every year, a third of the valuation of shares of incorporated banks every year, but with no common superior to secure equalization as between the different classes of property. The evidence showed that in the county where complainant's bank was situate the assessors of real property, the assessors of personal property, and the county auditor (who was the assessing officer for bank shares) concurred in establishing a rule of valuation by which real and personal property, except money, were

assessed at one-third of actual values, and money or invested capital at six-tenths of its value; that this rule was followed; and that for the year in question the state board of equalization increased the assessment upon the bank shares to their full cash value. This court held (p. 157) that "when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the (state) constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, [that] equity may properly interfere to restrain the operation of this unconstitutional exercise of power"; and that this being the case made by the bill, and being supported by the evidence, while the statute could not be declared unconstitutional, the discriminatory rule must be held void and the injustice produced under it remedied so far as the judicial power could give remedy.

(5) Is discriminatory taxation, contravening the express requirements of the state constitution, beyond redress in the courts of the United States, their jurisdiction being properly invoked, when the discrimination results from divergent action by different assessing boards whose assessments are not subject to any process of equalization established by the State, and where the diverse results are the outcome, not, indeed, of any express agreement among the officials concerned, but of intentional, systematic, and persistent undervaluation by one body of officials, presumably known to and ignored by the other body, so that in effect the two bodies act in concert? In our opinion, the answer must be in the negative.

Appellants' contention that there is no remedy by injunction against the assessments imposed by the Board of Valuation and Assessment places undue emphasis upon the requirement contained in § 172 of the constitution, that all property shall be assessed for taxation at its fair

cash value, estimated at the price it would bring at a fair voluntary sale,—a provision that is repeated in § 4020, Ky. Stats., which deals with the duties of assessing officers. The averments of the bills of complaint, admitted on this record, are that the Board did not assess the property of plaintiffs at fair cash value, but at 75 per cent. thereof, and that this resulted in unequal taxation only because the county assessments were at a still lower percentage. But, laying this aside, and assuming for the moment that the Board performed its duty strictly in accordance with § 172, by assessing plaintiffs' properties at fair cash value, what is the effect of that action, in view of the systematic undervaluations by the assessing officers charged with valuing other classes of property? This question cannot be answered without considering the relation of § 172 to §§ 171 and 174, which require uniform taxation according to value, and an identical rate as between corporate and individual property. The operation and effect of such a taxing system, both in respect to raising the necessary moneys and in distributing the burden among the taxpayers, depend upon two considerations: first, the rate of taxation, and, secondly, the basis of valuation of the property to be taxed. Plainly, the provision of § 174 that "all corporate property shall pay the same rate of taxation paid by individual property" means that not only the percentage of the rate, but the basis of the valuation shall be the same. "Taxing by a uniform rule requires uniformity not only in the *rate* of taxation, but also uniformity in the *mode of the assessment* upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation." *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. 1, 15, quoted in *Cummings* v. *National Bank*, 101 U. S. 153, 158.

It is equally plain that it makes no difference what basis

of valuation—that is, what percentage of full value—
may be adopted, *provided it be applied to all alike.* The
adoption of full value has no different effect in distributing
the burden than would be gained by adopting 75 per cent.,
or 50 per cent., or even 10 per cent., as the basis—so long
as either was applied uniformly.[1] The only difference
would be that, supposing the requirements of the treasury
remained constant, the rate of taxation would have to be
increased as the percentage of valuation was reduced.
(Under § 171 of the constitution, the rate of taxation may
be varied by the General Assembly from year to year,
according to requirements.) Therefore, the principal
if not the sole reason for adopting "fair cash value" as
the standard for valuations, is as a convenient means to
an end—the end being equal taxation. But if the standard
be systematically departed from with respect to certain
classes of property, while applied as to other property,
it does not serve but frustrates the very object it was de-
signed to accomplish. It follows that the duty to assess
at full value cannot be supreme in all cases, but must
yield where necessary to avoid defeating its own purpose.

A substantially identical question was presented to the
Circuit Court of Appeals for the Sixth Circuit in *Taylor
v. Louisville & Nashville R. R. Co.*, 88 Fed. Rep. 350,
where the Constitution of Tennessee declared that all
property should be taxed according to its value, to be
ascertained as the legislature should direct, "so that taxes
shall be equal and uniform throughout the State," and
the statutes required that the real value of the property
be adopted, and where, as here, railroad property and

---

[1] A few of the States have enacted laws adopting percentages of full
value as bases of taxation: Iowa, 25 per cent. (Code Supp. 1907,
§ 1305); Illinois, 20 per cent. (Hurd's Stat. 1898, p. 1365, e), afterwards
33⅓ per cent. (Hurd's Stat. 1909, p. 1882, § 312; Hurd's Stat. 1912,
p. 1963, § 312); Nebraska, 20 per cent. (Rev. Stats. 1913, § 6300);
Alabama, 60 per cent. (Gen. Acts 1915, p. 393, § 9).

some other kinds were valued by one set of officials, and property in general by another, without provision for equalization as between the two classes. The court, by Circuit Judge Taft, said (p. 364): "The sole and manifest purpose of the constitution was to secure uniformity and equality of burden upon all the property in the State. As a means of doing so (conceding that defendant's construction is the correct one), it provided that the assessment should be according to its true value. It emphasized the object of the section by expressly providing that no species of property should be taxed higher than any other species. We have before us a case in which the complaining taxpayer, and other taxpayers owning the same species of property, are taxed at a higher rate than the owners of other species of property. This does not come about by legislative discrimination, but by the intentional and systematic disregard of the law by those charged with the duty of assessing all other species of property than that owned by complainant and its fellows of the same class. . . . [p. 365] The question presented is, then, whether, when the sole object of an article of the constitution is being flagrantly defeated, to the gross pecuniary injury of a class of litigants, and one of them appeals to a court of equity for relief, it must be withheld because the only mode of granting it will involve an apparent departure from the method marked out by the constitution and the law for attaining its sole object. We say 'apparent' departure from the constitutional method, because that instrument contemplated a system in which all property should be assessed at its real value. . . . The court is placed in a dilemma, from which it can only escape by taking that path which, while it involves a nominal departure from the letter of the law, does injury to no one, and secures that uniformity of tax burden which was the sole end of the constitution. To hold otherwise is to make the restrictions of the constitu-

tion instruments for defeating the very purpose they were intended to subserve. It is to stick in the bark, and to be blind to the substance of things. It is to sacrifice justice to its incident."

After pointing out the similarity of the case to *Cummings* v. *National Bank, supra,* and declaring (p. 372): "An intentional undervaluation of a large class of property, when the law enjoins assessment at true value, is necessarily designed to operate unequally upon other classes of property to be assessed by other taxing tribunals, who, it may be presumed, will conform to the law," the court further said (p. 374): "The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one tribunal, and the whole assessment on all classes of property is to be regarded as one judgment. If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully-assessed property. And this is true although the particular board assessing the complainant's property may have been wholly free from fault of fraud or intentional discrimination."

The justice of this view has been recognized by the state courts of last resort in many cases. *Bureau County* v. *Chicago &c., R. R. Co.,* 44 Illinois, 229, 239; *Cocheco Co.* v. *Strafford,* 51 N. H. 455, 482; *Manchester Mills* v. *Manchester,* 58 N. H. 38; *Randell* v. *City of Bridgeport,* 63 Connecticut, 321, 324; *C., B. & Q. R. R. Co.* v. *Comm'rs of Atchison Co.,* 54 Kansas, 781, 792; *Ex parte Fort Smith &c. Bridge Co.,* 62 Arkansas, 461, 468; *Burnham* v. *Barber,* 70 Iowa, 87, 90; *Barz* v. *Board of Equalization,* 133 Iowa, 563, 565; *Iowa Cent. Ry. Co.* v. *Board of Review* (Iowa,

1916), 157 N. W. Rep. 731; *Lehigh & Wilkes-Barre Coal Co. v. Luzerne Co.*, 225 Pa. St. 267, 271; *People v. I. C. R. R. Co.*, 273 Illinois, 220, 244–250. There are declarations to the contrary (*Central R. R. Co. v. State Board of Assessors*, 48 N. J. L. 1, 7; *Lowell v. County Commissioners*, 152 Massachusetts, 372, 375), but they take little or no account of the rights of aggrieved taxpayers.

(6) The next question in order is whether the assessments have the effect of denying to plaintiffs the equal protection of the laws, within the meaning of the Fourteenth Amendment. It is obvious, however, in view of the result reached upon the questions of state law, just discussed, that the disposition of the cases would not be affected by whatever result we might reach upon the federal question; for no other or greater relief is sought under the "equal protection" clause than plaintiffs are entitled to under the provisions of the constitution and laws of the State to which we have referred. Therefore, we find it unnecessary to express any opinion upon the question raised under the Fourteenth Amendment.

(7) It is objected that appellees had an adequate remedy at law, and *Singer Sewing Machine Co. v. Benedict*, 229 U. S. 481, is cited as a controlling authority. There the suit was brought to enjoin the collection of taxes levied by the City and County of Denver, in the State of Colorado, and because of the Act of Congress (Rev. Stats., § 723) and familiar decisions applying and enforcing it, since it appeared that a local statute required the board of county commissioners to refund taxes paid and thereafter found to be erroneous or illegal, "whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, to clerical or other errors of omission," with a correlative right on the part of the taxpayer to enforce that duty by action at law, and the decisions of the Supreme Court of the State interpreted the statute so as to give an adequate remedy at law, this court affirmed a decree dismissing the bill.

The statute that is here invoked is § 162, Ky. Stats., which reads as follows: "§ 162. Taxes wrongfully collected refunded. When it shall appear to the Auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same. . . ." But, by a line of recent decisions in the Kentucky Court of Appeals, the effect of this section has been confined to cases where the taxes paid either were wholly without warrant in law or were based upon a mistake as to the rate of taxation upon the amount assessed; and it has been held not to authorize the Auditor to correct erroneous assessments, since that official is not entrusted with authority to make assessments. *German Security Bank v. Coulter*, 112 Kentucky, 577; *Louisville City National Bank v. Coulter*, 112 Kentucky, 584, 587; *Couty v. Bosworth*, 160 Kentucky, 312; *Bosworth v. Metropolitan Life Ins. Co.*, 162 Kentucky, 344, 348; *Louisville Gas & Electric Co. v. Bosworth*, 169 Kentucky, 824, 829, 830.

But, were it otherwise, § 162 clearly applies to state taxes alone, while the bills of complaint herein have to do with both state and local taxes. A remedy at law cannot be considered adequate, so as to prevent equitable relief, unless it covers the entire case made by the bill in equity. Were we to require a dismissal of these bills as to the state taxes, retaining them as to the local taxes, we should multiply suits, instead of preventing a multiplicity of suits. It is a familiar maxim that "a court of equity ought to do justice completely, and not by halves;" and to this end, having properly acquired jurisdiction of a cause for any purpose, it should dispose of the entire controversy and its incidents, and not remit any part of it to a court of law. *Camp v. Boyd*, 229 U. S. 530, 551, 552; *McGowan v. Parish*, 237 U. S. 285, 296.

(8) It is contended that appellees, if aggrieved, had

another and more equitable remedy than a suit for injunction; that the law of the State provides a method by which, instead of lowering the assessments upon the property of appellees, they could by proper procedure compel the assessment of the property of other taxpayers to be increased so as to come within the constitutional requirement as to fair cash value, and hence that it was the duty of appellees to adopt that method. The reference is to §§ 4115–4120, Ky. Stats., which require the county board of supervisors to convene annually and make a careful examination of the assessor's books and each individual list thereof, empowering them to increase or decrease any list; "but the board shall not reduce or raise any assessment unless the evidence be clear and unmistakable that the valuation is not a fair cash value." By § 4123, they may hear complaints, summon and swear witnesses, and require them to testify. There is nothing in these provisions to indicate that parties in the situation of the present appellees, who have no different interest in the undervaluation by the county assessors than that which might be possessed by any other citizens of the State, are entitled to be heard to complain that the county assessments are too low. Nor is any case cited where such a complaint has been entertained. The remedy of reassessment appears to be a public, not a private remedy.

We conclude that the decrees of the District Court must be, and they are

*Affirmed.*

MR. JUSTICE HOLMES, MR. JUSTICE BRANDEIS, and MR. JUSTICE CLARKE dissent.