## GAMMILL LUMBER CO. v. BOARD OF SUP'RS OF RANKIN COUNTY et al.

(District Court, S. D. Mississippi, Jackson Division. May 7, 1921.)

No. 127.

1. **Courts ☞282(3)—Allegation as to assessment in violation of equal protection clause gives jurisdiction of the whole case.**

   In a suit for equitable relief against alleged invalid assessments, plaintiff's contention that the assessments, if carried out, will violate the equal protection provision of the Fourteenth Amendment, presents a real and substantial controversy under the Constitution, which, the jurisdictional amount being involved, confers jurisdiction, irrespective of the citizenship of the parties, and the jurisdiction extends to the determination of all questions involved, including questions of state law, irrespective of the disposition of the federal question, or whether it be found necessary to decide it at all.

2. **Taxation ☞608(12)—Equity held to have jurisdiction, if remedy at law against invalid assessments not adequate.**

   A suit in equity may be maintained by an owner of tracts of timber lands, where a cloud is cast on the title by the attempt of the board of supervisors to assess and collect an invalid tax, unless there is a plain, adequate, and complete remedy at law, and if it be doubtful whether there is an adequate remedy at law, the court of equity will take cognizance.

3. **Taxation ☞608(5)—Remedy under statute held doubtful, and not to prevent equitable relief against invalid assessments.**

   Under Const. Miss. 1890, § 181, requiring taxation of the property of private corporations to the same extent as that of individuals, and section 112, permitting a special mode of valuation and assessment of railroad and corporate property, and Code Miss. 1906, § 80, as amended by Laws 1918, c. 120, relative to appeals by persons aggrieved by any assess-

ment of taxes, and section 4310, providing that the appeal shall not delay the collection of the taxes, but that any money improperly collected shall be refunded, etc., where property is not only overvalued, but assessed at more than its market value, while all other property in the county is customarily, systematically, and intentionally assessed at not exceeding 60 per cent. of its fair market value, it is doubtful whether relief against the discrimination may be had by appeal, and equity will take jurisdiction.

4. **Taxation ⊗═40 (8)—Discriminatory valuation of corporate property held contrary to Constitution.**

The assessment of the capital stock of a corporation at more than its market value, where other property in the county is customarily, systematically, and intentionally assessed at not exceeding 60 per cent. of its fair market value, is a plain violation of Const. Miss. 1890, §§ 112, 181.

5. **Courts ⊗═262 (4)—Equity has jurisdiction to grant relief against fraudulent discrimination in taxation.**

An intentional discrimination in taxation is fraudulent, and it is within the jurisdiction of federal courts of equity to grant relief against such fraud.

6. **Courts ⟵═489 (1)—Federal equity court's jurisdiction not affected by blending of remedies in state courts.**

That, on the hearing of an appeal from an assessment for taxation by a board of supervisors the state courts will sit as courts of law and equity and grant full relief, both legal and equitable, cannot deprive a federal court of equity of power to grant relief in a case properly falling within its equitable jurisdiction, as the blending in a state statute of legal and equitable remedies will not affect the ancient equitable jurisdiction of the federal court.

7. **Courts ⊗═262 (2)—Federal court without jurisdiction of statutory proceeding to review assessment.**

The remedy at law provided by Code Miss. 1906, § 80, as amended by Laws 1918, c. 120, authorizing appeals by persons aggrieved by assessments of property, is not available on the law side of the United States courts.

In Equity. Suit by the Gammill Lumber Company against the Board of Supervisors of Rankin County and others. On motions to dismiss and for preliminary injunction. Motion to dismiss overruled, and motion for injunction sustained.

Watkins, Watkins & Eager, of Jackson, Miss., for complainant.

May & Sanders and R. H. & J. H. Thompson, all of Jackson, Miss., and S. L. McLaurin, of Brandon, Miss., for defendants.

HOLMES, District Judge. [1] On the question of federal jurisdiction in this case I cannot do better than use the language of the Supreme Court in Greene v. Interurban Railroad Co., 244 U. S. at page 502, 37 Sup. Ct. 675, 61 L. Ed. 1280, Ann. Cas. 1917E, 88:

"There being no diversity of citizenship, the jurisdiction of the District Court was invoked, under the first paragraph of section 24, Judicial Code, upon the ground that the suits arose under the 'due process' and 'equal protection' clauses of the Fourteenth Amendment of the Constitution of the United States, and that the matter in dispute in each case was in excess of the jurisdictional amount. Plaintiffs also relied upon certain provisions of the Constitution of the state that require uniform taxation of property according to value and at the same rate for corporate as for individual property. * * *"

---

And at 244 U. S. 508, 37 Sup. Ct. 677, 61 L. Ed. 1280, Ann. Cas. 1917E, 88:

"The contention of plaintiffs, set forth in their respective bills of complaint, that the action of the board of valuation and assessment in making the assessments under consideration and the threatened action of defendants in respect of carrying those assessments into effect constituted action by the state, and if carried out would violate the equal protection provision of the Fourteenth Amendment, presents, without question, a real and substantial controversy under the Constitution of the United States, which (there being involved a sum and value in excess of the jurisdictional amount) conferred jurisdiction upon the federal court, irrespective of the citizenship of the parties. This being so, the jurisdiction of that court extended, and ours on appeal extends, to the determination of all questions involved in the case, including questions of state law, irrespective of the disposition that may be made of the federal question, or whether it be found necessary to decide it at all. Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 191; Ohio Tax Cases, 232 U. S. 576, 586. * * *"

And at 244 U. S. 519, 37 Sup. Ct. 681, 61 L. Ed. 1280, Ann. Cas. 1917E, 88:

"The next question in order is whether the assessments have the effect of denying to plaintiffs the equal protection of the laws, within the meaning of the Fourteenth Amendment. It is obvious, however, in view of the result reached upon the question of state law, just discussed, that the disposition of the cases would not be affected by whatever result we might reach upon the federal question; for no other or greater relief is sought under the 'equal protection' clause than plaintiffs are entitled to under the provisions of the Constitution and laws of the state to which we have referred. Therefore we find it unnecessary to express any opinion upon the question raised under the Fourteenth Amendment."

[2] Turning to the question of equitable jurisdiction, the bill alleges that the plaintiff is the owner of various and sundry tracts of timber lands situated in Rankin and other counties in the state of Mississippi, and that a cloud is cast upon the title of said lands by the attempt of the defendants to assess and collect an invalid tax. This entitles the plaintiff to bring a suit in equity, unless the contention that under the Mississippi statute it has a plain, adequate, and complete remedy at law be well founded. Union Pacific Ry. Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601, 28 L. Ed. 1098; Pacific Express Co. v. Seibert, 142 U. S. 339, 348, 12 Sup. Ct. 250, 35 L. Ed. 1035; Ogden City v. Armstrong, 168 U. S. 224, 237, 18 Sup. Ct. 98, 42 L. Ed. 444; Ohio Tax Cases, 232 U. S. 576, 587, 34 Sup. Ct. 372, 58 L. Ed. 737; Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 506, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

If under Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, P. H. Lindsay, Assessor v. First National Bank, 156 U. S. 485, 15 Sup. Ct. 472, 39 L. Ed. 505, Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757, Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, Union Pacific R. R. Co. v. Weld County, Colo., 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110, Shaffer v. Carter, State Auditor, 252 U. S. 37, 40 Sup. Ct. 221, 64 L. Ed. 445, and other similar cases, it be doubtful whether the Mississippi

statutes afford an adequate remedy, a court of equity will not decline to take cognizance of the suit, because:

"Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." Davis v. Wakelee, 156 U. S. 680, 688, 15 Sup. Ct. 555, 558, 39 L. Ed. 578, 584.

[3] This is not simply a case of overvaluation of property in an assessment for taxes, but, while alleging that the assessment exceeds the actual market value of the stock, the bill alleges also that in arriving at the excessive valuation the defendants discriminated against the plaintiff and in favor of other taxpayers by deliberately and intentionally assessing the plaintiff's property at a different and greater per cent. of its real value than the property of other citizens was assessed, in that the property of other citizens, corporations, and individuals, whether real or personal, in Rankin county, Miss., is customarily, systematically and intentionally assessed by the board at not exceeding 60 per cent. of its fair market value, while the property of the plaintiff is assessed at a sum in excess of its real market value, thereby violating designated provisions of the Constitution of Mississippi and the Constitution of the United States.

In so far as the complaint has reference merely to an overvaluation in the assessment it may be that the Mississippi statute affords an adequate remedy by an appeal from the order of the board of supervisors, but in so far as the complaint rests upon a discrimination against the plaintiff by assessing its property at more than 100 per cent. of its actual value, while the property of other persons is customarily and intentionally assessed at not exceeding 60 per cent., a very different question arises. Granting the doubtful proposition that the remedy provided by law and cognizable in the federal courts is adequate for an overvaluation of property, the question arises: What remedy, if any, could the plaintiff obtain by a proceeding at law on appeal from the order of the board of supervisors from the illegal and unjust discrimination against it on the part of the board in assessing its property at more than its real market value, and assessing the property of all other persons, individual and corporate, at not exceeding 60 per cent. of such value, and could any court, in a legal action, give complete or any relief in a case of this character? It is true the circuit or Supreme Court of the state on appeal would have the power to lower the valuation to the extent that it exceeded the real market value; but, if the legal remedy could go no further than this, it would leave the plaintiff's property assessed at 100 per cent. and the property of other persons at not exceeding 60 per cent. of the true value.

The remedy at law afforded the plaintiff by the Mississippi statutes is provided for in section 80 of the Mississippi Code of 1906, as amended by chapter 120 of the Laws of 1918. This section is as follows:

"Any person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village, as to the assessment of taxes, may, within five days after the adjournment of the meeting at which such decision is made, appeal to the circuit court of the county, upon giving bond, with sufficient sureties, in double the amount of the matter in dispute,

but never less than one hundred dollars, payable to the state, and conditioned to perform the judgment of the circuit court, and to be approved by the clerk of such board, who, upon the filing of such bond, shall make a true copy of any papers on file relating to such controversy, and file such copy certified by him, with said bond, in the office of the clerk of the circuit court, on or before its next term; and the controversy shall be tried anew in the circuit court at the first term, and be a' preference case, and, if the matter be decided against the person who appealed, judgment shall be rendered on the appeal-bond for damages at the rate of ten per centum on the amount in controversy and all costs. If the matter be decided in favor of the person who appealed, judgment in his favor shall be certified to the board of supervisors, or the municipal authorities, as the case may be, which shall conform thereto, and shall pay the costs. The county attorney, the district, or the attorney general, if the state, county or municipality be aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village as to the assessment of taxes, may, within twenty days after the adjournment of the meeting at which such decision is made, or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected in accordance with the instructions of the state tax commission, or within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the roll by the state tax commission is entered, appeal to the circuit 'court of the county in like manner as in the case of any person aggrieved as hereinbefore provided, except no bond shall be required, and such appeal may be otherwise governed by the provisions of this section."

The effect of the appeal, however, is limited by section 4310 of the Code of 1906, which is as follows:

"4310. (3797) *Effect of an Appeal, and Proceedings in Case of*—In case of an appeal from the judgment of the board of supervisors in the matter of an assessment, the appeal shall not delay the collection of taxes due by the assessment as approved; and if such taxes be collected before a final disposition of the appeal, and the judgment be in favor of the person appealing, in whole or in part, as to the matter in dispute, any money improperly collected from him for taxes, as shown by the judgment, shall be refunded to him by the state and county respectively, if they have received the money; and, if it shall not have been paid over, the tax-collector receiving it shall refund it to him; and his claim, if against the state, shall be audited by the auditor, and a warrant issued for the amount after the auditor shall have submitted the matter to the Attorney-General, and obtained his opinion that it is a legal demand against the state, and the board of supervisors shall, after such allowance by the auditor, audit and allow the claim of the party against the county. If the case be decided in favor of the party appealing while the collector is proceeding with the collection of taxes, he shall conform his action to the judgment."

In construing the latter section the Supreme Court of Mississippi, in Tunica County v. Tate, 78 Miss. 294, 29 South. 74, has held that an appeal under the section does not supersede or delay the collection of the taxes.

Section 181 of the Constitution of Mississippi provides that the property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals, but section 112 permits the Legislature to provide for a special mode of valuation and assessment for railroad and other corporate property, provided that all such property shall be assessed at its true value. The capital stock of corporations other than banks and railroad companies is required to be assessed at its market value, less the aggregate value

of the real and personal property owned by such corporations which is required to be separately assessed.

The plaintiff in this case is a private corporation for pecuniary gain, and under said sections 112 and 181, its real and personal property and its franchise are required to be taxed at their true value in the same way and to the same extent as the property of individuals. The value of the franchise of a corporation is nothing more or less than the amount that the value of its capital stock exceeds the aggregate value of all of its tangible property, real and personal. No complaint is made in the bill of any discrimination against the plaintiff in the assessment of its real and personal property, but complaint is made that, when it came to assessing the value of the capital stock of the plaintiff, the board of supervisors deliberately, intentionally, and systematically assessed all other property in the county of persons and corporations at not exceeding 60 per cent. of the true value, whereas it assessed the capital stock of the plaintiff at more than 100 per cent. If permitted to appeal from the action of the board in erroneously assessing other property below value, plaintiff would be involved in a multiplicity of suits, but it seems the statutes do not allow an appeal in such cases. Magnolia Bank v. Board of Supervisors of Pike County, 111 Miss. 857, 72 South. 697, 3 A. L. R. 1365.

[4] Granting that on appeal the plaintiff would have a remedy as to the overvaluation, it is doubtful under the Mississippi statutes whether the circuit or Supreme Court could do more than reduce the assessment to the market value of the capital stock, less the separate assessments of its real and personal property, thereby leaving the capital stock of the plaintiff assessed at its full value, and all other property in the county of corporations and individuals intentionally and systematically assessed at 60 per cent. thereof. Here, then, is a plain violation of the Constitution of the state, which requires the property of all private corporations for pecuniary gain to be taxed in the same way and to the same extent as the property of individuals, and to be taxed at its true value. We have, then, the violation of a right for which the law affords but a doubtful remedy in the state courts and no remedy at all in the federal courts.

In distinguishing the case of Taylor v. Railroad Company, 88 Fed. 350, 31 C. C. A. 537, the Supreme Court of Mississippi, in the Magnolia Bank Case, 111 Miss. 857, 72 South. 697, 3 A. L. R. 1365, called attention to the fact that the Tennessee Constitution did not place railroads in a class to themselves, but forbade discrimination between species of property. I have already called attention to the fact that corporations such as the plaintiff are not placed, under the Mississippi Constitution, in a class to themselves, but that discrimination against them is expressly prohibited, and that they are required to be taxed exactly like individuals.

I think, therefore, that the case of Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, is absolutely decisive of every question raised in this case, except in so far as the question of whether or not the plaintiff has a plain, adequate, and complete remedy at law is affected by the

difference between the Kentucky and the Mississippi statutes with reference to the recovery of taxes wrongfully paid. The salient principles therein announced were: (a) That equity has jurisdiction to enjoin unlawful tax proceedings, which cloud the plaintiff's title and threaten irreparable injury and a multiplicity of suits; (b) that discrimination resulting from an assessment of the tangible property of a railroad corporation at 75 per cent. of its actual value, while the property of individuals and other classes of corporations taxed at the same rate is generally and systematically assessed at not more than 60 per cent. of actual value, is violative of the Kentucky Constitution, requiring uniform taxation in proportion to value and an identical rate as between corporate and individual property; (c) that a holding by the Supreme Court of Kentucky that such discrimination is not in accord with the Constitution and laws of the state, but that there is no redress in the courts of the state, and that the constitutional provisions for equality and uniformity are capable of being put into execution only through the selection of proper assessing officers, while admitting the wrong, merely denies judicial relief, and is not binding upon the federal courts; (d) that the courts of the United States, when their jurisdiction is properly invoked, may afford relief against discrimination in state taxation contravening the Constitution, when the discrimination results from an intentional, systematic, and persistent undervaluation, and this is true whether the discrimination results from the action of one board or from the divergent action of different boards; (e) that sections 171 and 174 of the Kentucky Constitution requiring uniform taxation according to value and an identical rate between corporate and individual property, and requiring that "all corporate property shall have the same rate of taxation paid by individual property," means that not only the percentage of the rate, but the basis of valuation, shall be the same; (f) that uniformity implies equality, and that equality cannot exist without uniformity in the basis of assessment, as well as in the rate of taxation; (g) that when the value of taxation is systematically departed from in respect of certain classes of property its observance in respect of others would serve to frustrate its very object, and it follows that in such cases the duty to assess at full value is not supreme, but yields to the duty to avoid discrimination; (h) that the Kentucky statutes do not afford an adequate legal remedy against discriminatory assessments for both state and local taxes; (i) that a railroad company, whose intangible property is subjected to discrimination in assessment through undervaluation of other property by different assessors, is not afforded an adequate remedy, though the Kentucky statutes provided for readjustment of one class of assessment through the county board of supervisors.

The provisions of the Kentucky Constitution for assessing all property, including railroad property, are so nearly identical in meaning with the provisions of the Mississippi Constitution for assessing private corporations for pecuniary gain, such as the plaintiff, that every point urged against the plaintiff's contention seems to be settled by the Greene Case, except the question, as above stated, as to whether the

Mississippi statute affords a full, adequate, and complete remedy at law.

In the Greene Case the discrimination arose by different officers or taxing bodies adopting a different basis of valuation in assessments. In this case the same body adopts not greater than 60 per cent. for all property of individuals and corporations, except the capital stock of the plaintiff, and assesses that at more than 100 per cent. of its value. In the Greene Case the court says:

"It hardly is open to serious dispute that if the Legislature had confided to a single body the determination of the basis of assessment of the real estate and personal property of individuals and nonfranchise corporations, on the one hand, and of the tangible and intangible property of public service corporations, on the other, a valuation of property of the latter class on the basis of 75 per cent. of its actual value, while property of the former class was assessed systematically at 52 per cent., or not more than 60 per cent., of its actual value, would be inconsistent with the sections we have quoted from the Kentucky Constitution. For the provision of section 182, permitting the General Assembly to provide by law 'how railroads and railroad property shall be assessed, and how taxes thereon shall be collected,' relates merely to the mode of assessment and collection, and manifestly does not permit a departure from the requirements of uniform taxation in proportion to value and an identical rate as between corporate and individual property, contained in sections 171 and 174. The latter section permits the General Assembly to provide for taxation based on income, licenses, or franchises. But, as already stated, at least at the time these suits arose, there was no provision of law for a taxation of franchises in any other sense than that already explained. Marion National Bank v. Burton, 121 Kentucky, 876, 885.

"The fact should be emphasized that the Kentucky court of last resort, far from holding that discrimination such as is here complained of is in accord with the Constitution and laws of the state, has recognized distinctly that it is not, but has felt constrained to hold that, under circumstances similar to those of the present cases, there is no redress in the courts of the state, and that the constitutional provisions for equality and uniformity are capable of being put into execution only through the selection of proper assessing officers. Louisville Railway Co. v. Commonwealth, 105 Kentucky, 710, 719. This, while admitting the wrong, merely denies judicial relief, and is not binding upon the federal courts."

The court quotes at length and with approval from the case of Taylor v. Louisville & Nashville Railroad Co., 88 Fed. 350, 31 C. C. A. 537. After quoting from the opinion of Judge Taft, that:

"If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon fully assessed property"

—Mr. Justice Pitney says:

"The justice of this view has been recognized by the state courts of last resort in many cases. Bureau County v. Chicago, etc., R. R. Co., 44 Ill. 229, 239; Cocheco Co. v. Strafford, 51 N. H. 455, 482; Manchester Mills v. Manchester, 58 N. H. 38; Randell v. City of Bridgeport, 63 Conn. 321, 324; C., B. & Q. R. R. Co. v. Com'rs of Atchison Co., 54 Kan. 781, 792; Ex parte Ft. Smith, etc., Bridge Co., 62 Ark. 461, 468; Burnham v. Barber, 70 Iowa, 87, 90; Barz v. Board of Equalization, 133 Iowa, 563, 565; Iowa Cent. Ry. Co. v. Board of Review (Iowa, 1916) 157 N. W. 731; Lehigh & Wilkes-Barre Coal Co. v. Luzerne Co., 225 Pa. St. 267, 271; People v. I. C. R. R. Co., 273 Ill.

220, 244–250. There are declarations to the contrary (Central R. R. Co. v. State Board of Assessors, 48 N. J. Law, 1, 7; Lowell v. County Commissioners, 152 Mass. 372, 375), but they take little or no account of the rights of aggrieved taxpayers."

After distinguishing the case of Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288, the court concludes its decision as follows:

"It is contended that appellees if aggrieved, had another and more equitable remedy than a suit for injunction; that the law of the state provides a method by which, instead of lowering the assessments upon the property of appellees, they could by proper procedure compel the assessment of the property of other taxpayers to be increased, so as to come within the constitutional requirement as to fair cash value, and hence that it was the duty of appellees to adopt that method. The reference is to sections 4115–4120, Ky. Stats., which require the county board of supervisors to convene annually and make a careful examination of the assessor's books and each individual list thereof, empowering them to increase or decrease any list; 'but the board shall not reduce or raise any assessment unless the evidence be clear and unmistakable that the valuation is not a fair cash value.' By section 4123, they may hear complaints, summon and swear witnesses, and require them to testify. There is nothing in these provisions to indicate that parties in the situation of the present appellees, who have no different interest in the undervaluation by the county assessors than that which might be possessed by any other citizens of the state, are entitled to be heard to complain that the county assessments are too low. Nor is any case cited where such a complaint has been entertained. The remedy of reassessment appears to be a public, not a private, remedy."

[5, 6] An intentional discrimination in taxation is fraudulent, and it is within the jurisdiction of the federal courts of equity to grant relief against fraud. It was argued that the state circuit and Supreme Courts, on the hearing of an appeal from the board of supervisors, would sit as a court of law and equity, and grant full relief, both legal and equitable. Even if this be true, the federal equity court would not be deprived of the power to grant relief in a case properly falling within its equitable jurisdiction. In other words, the blending in a state statute of legal and equitable remedies will not affect the ancient equitable jurisdiction of this court.

[7] The remedy at law provided by section 80 of the Code of 1906 is not available upon the law side of the United States courts, and even if it be such a remedy as the federal court may take cognizance of, it is not adequate, and does not afford to the plaintiff in this case as full, complete, and efficient relief as a court of equity, and for these reasons I think the motion to dismiss the bill should be overruled, and the motion for a preliminary injunction sustained; but I do not think it proper to enjoin the proceedings now pending on appeal in the state court. The injunctive relief prayed for will be granted with this exception. A decree may be drawn in accordance with this opinion. The plaintiff will be required to give bond in double the amount of the taxes enjoined.