THE KEOKUK & HAMILTON BRIDGE COMPANY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield, June 19, 1893.*

1. STATE BOUNDARY—*middle of a navigable stream.* When the middle of a navigable river becomes the boundary line between two States, as is the case with Illinois and Iowa, the middle of the current or channel of commerce will be regarded as the boundary line.

2. In such case, formerly a line drawn along the middle of the water, the *medium filum aquæ,* was regarded as the boundary line, and still will be regarded *prima facie* as the boundary line, except to those parts of the river as to which it can be proved that the vessels which navigate those parts keep their course habitually along some channel different from the *medium filum.* Where this is the case, the middle of the channel of traffic is now considered to be the line of demarcation.

3. The jurisdiction of each of the States of Illinois and Iowa extends to the thread of the Mississippi river, that is, the middle channel, and if there be several channels, to the middle of the principal one, or rather the one usually followed.

4. TAXATION—*of bridge across boundary river.* An assessor in this State, in assessing a bridge over a navigable river forming a boundary of the State for the purpose of taxation, will have no right to assess any part of such bridge that is located beyond the boundary line of this State.

5. SAME—*description of bridge over a boundary river.* Section 299 of the Revenue act, relating to the assessment of bridges partly in this State, requires the assessor to give in his description the quarter section, section, township and range in which the bridge is located, together with the metes and bounds of the ground occupied by such bridge, and the approaches thereto, from the Illinois shore to the center of the main channel of the stream covered by the same. Under this statute it is the duty of the assessor to state the length of the bridge and approaches assessed.

6. SAME—*excessive valuation—as a defense to judgment.* On application for judgment against property for taxes, it is unimportant whether

the property has been assessed more or less than it should have been, or more or less than other like property in the county. Unless the property has been fraudulently assessed more than its fair cash value, the courts can not interfere with the action of the assessor. The fact that property is assessed too high, does not establish the fact that the assessor was actuated by fraud or other improper motives. It may be caused by an honest mistake or error of judgment.

APPEAL from the County Court of Hancock County; the Hon. JOHN D. MILLER, Judge, presiding.

Mr. G. EDMUNDS, for the appellant:

If the assessor fraudulently assessed the bridge property at a higher rate than he assessed other property, the assessment is void. Cooley on Taxation (2d ed.), 218, 219; *Morrill* v. *Humphrey*, 24 Mich. 172; *Bureau Co.* v. *C., B. & Q. R. R. Co.*, 44 Ill. 229; *C. & N. W. Ry. Co.* v. *Boone Co.*, 44 id. 240; *C., B. & Q. R. R. Co.* v. *Cole*, 75 id. 591; *Porter* v. *R., R. I. & St. L. R. R. Co.*, 76 id. 564; *Cummins* v. *Nat. Bank*, 101 U. S. 153; *People* v. *Weaver*, 100 id. 305; *Evansville Bank* v. *Britton*, 105 Ill. 322; *Hills* v. *Exchange Bank*, 105 U. S. 319; Desty on Taxation, 675, 681, sec. 121; *N. Y. Stock Exchange* v. *Gleason*, 123 Ill. 542; *Pacific Hotel Co.* v. *Lieb*, 83 id. 609; *Gage* v. *Evans*, 90 id. 569; *Chicago* v. *Burtice*, 24 id. 491; *Adsit* v. *Lieb*, 76 id. 198.

As to what is the thread of a navigable stream, and the boundary line between this State and Iowa, see *Trustees* v. *Dickinson*, 3 Cush. 544; Angell on Watercourses, secs. 10 and 101a; *Middleton* v. *Pritchard*, 3 Scam. 510; *Braxon* v. *Brusler*, 64 Ill. 490; *Canal Trustees* v. *Haven*, 5 Gilm. 557; *Chicago & Pacific R. R. Co.* v. *Stein*, 75 Ill. 44; *Hench* v. *Yates*, 82. id 181; *Cobb* v. *Lavalle*, 89 id. 334; *Washington Ice Co.* v. *Shortall*, 101 id. 52; *Village of Brooklyn* v. *Smith*, 104 id. 438; *Piper* v. *Connelly*, 108 id. 651; *McCartney* v. *C. & E. R. R. Co.*, 112 id. 634; *Butterworth* v. *St. Louis Bridge Co.*, 123 id. 550; *St. L. Bridge Co.* v. *East St. Louis*, 121 id. 238.

The middle of the bed of the stream, regardless of the deepest channel, is the line between riparian proprietors, whether individual or State. *Pratt* v. *Lawson*, 2 Allen, 275; Angell on Watercourses, sec. 10 and note, and sec. 11 and note; *Braxton* v. *Bressler*, 64 Ill. 448; 3 Kent Com., 426; *Jones* v. *Soulard*, 24 How. 41; *Washington Ice Co.* v. *Shortall, supra.*

Mr. WM. H. HARTZELL, State's Attorney, and Mr. FRANK HALBOWER, for the appellees:

The property valued in the assessment upon which the tax is based, is all within this State, as it is bounded on the west by the State line.

Was the property fraudulently assessed at more than its fair cash value, and more than any other property in the county was assessed? Fraud is never presumed, and the evidence fails to show fraud in the assessor.

Since the value of property is a matter of opinion, upon which different minds with equal opportunities of knowledge, and actuated by the same honest desire to arrive at the truth, are liable widely to differ, the courts will never interfere merely because the property has been assessed at a greater valuation than the court would have fixed upon it. *English* v. *People*, 96 Ill. 566; *Pacific Hotel Co.* v. *Lieb et al.*, 83 id. 602; *Connecting Railroad Co.* v. *People*, 119 id. 182; *Porter et al.* v. *R., R. I. & St. L. R. R. Co.*, 76 id. 561; *The Republic Life Insurance Co.* v. *Pollak et al.*, 75 id. 292; *The LaSalle & Peru Horse and Dummy Railroad Co.* v. *Donohue*, 127 id. 27; *Herman Felsenthal* v. *Johnson*, 104 id. 21; *The Illinois Central R. R. Co.* v. *Hodges et al.*, 113 id. 323; *The Board of Supervisors of DuPage County* v. *Jenks et al.*, 65 id. 275; *The People* v. *The Big Muddy Iron Company*, 89 id. 116; *The Ottawa Glass Co.* v. *McCaleb, County Clerk, et al.*, 81 id. 556; *Thatcher* v. *The People ex rel. Henry B. Miller*, 79 id. 597; *Spencer & Gardner* v. *The People*, 68 id. 510.

KEOKUK & HAMILTON BR. CO. v. THE PEOPLE. 599

Brief for the Appellees.    Opinion of the Court.

As to the boundary between this State and Iowa, counsel referred to the following among other authorities: Wheaton's International Law (3d Eng. ed.), sec. 200, p. 297; Creary on International Law, p. 222, sec. 231; 1 Halleck on International Law, 145, sec. 23; *Buttenuth* v. *St. Louis Bridge Co.*, 123 Ill. 535; *Dunbeth & Dubuque Bridge Co.* v. *Dubuque Co.*, 55 Iowa, 558; *St. Louis* v. *Rutz*, 138 U. S. 226.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment of the County Court of Hancock county, for taxes for the years 1890 and 1891, assessed against the property of the Keokuk & Hamilton Bridge Company. The Bridge Company appeared in the County Court, and filed several specific objections against the validity of the tax against its property. Evidence was heard, the objections overruled, and judgment entered for the amount of the tax assessed against the property. The Bridge Company applied for and obtained an appeal, and the following errors have been assigned on the record:

1st. The court erred in rendering judgment against the lands of the Keokuk & Hamilton Bridge Co. for the taxes of 1890 and 1891, or either of them, for the amount stated in said judgment; (*a*) because the property valued in the assessment upon which the tax is based was not all in the State of Illinois, the greater part thereof being in Iowa, and not subject to taxation in this State; (*b*) because said property was fraudulently assessed at more than its fair cash value, and more than any other property in the county is assessed in proportion to its value.

2d. Because the property was not described as required by law, and most of the value was of property not in Illinois, and not subject to taxation in this State.

3d. Because the law in relation to assessment and valuation of property was wholly disregarded, for the fraudulent purpose of compelling said company to pay more than its just proportion of taxation.

The first question raised by the errors assigned is whether the property assessed was all in the State of Illinois. The description of the property assessed, as appears from the return of the assessor, is as follows:

"The Hancock County Bridge Company, called the Keokuk Bridge Company, called also the Keokuk & Hamilton Bridge Company, all the lands of the Keokuk & Hamilton Bridge Company, situated in Hancock county, Illinois, and lying and being in and on Island No. 4, in the southwest quarter of section thirty (30), in township five (5) north, range eight (8) west, in said county, and extending westward into the Mississippi river to the State line between the States of Illinois and Iowa, and more particularly described as follows, viz.: A strip of land 80 feet wide, more or less, the center line of said strip of land commencing at a point in the center of Railroad avenue, in the plat of ground known as the Keokuk & Hamilton Ferry and Manufacturing Company's addition to the city of Hamilton, in said county, 707¾ feet south, 72° 40' east, of the center of the east end of said bridge, thence running north, 72° 40' west, to the east end of said bridge, thence continuing the same course along the center line of said bridge to the State line between the States of Illinois and Iowa, including the slopes, walls, embankments, abutments, piers, and bridge structures and improvements thereon."

From this return, made by the assessor, it appears that the property assessed was all within the State of Illinois. It is claimed, however, in the argument, that the return has been overcome by evidence introduced on the hearing, which shows that the assessment was based on a valuation of the bridge to the draw, which is beyond the boundary line of the State.

We do not propose, in this case, to enter upon an extended discussion in regard to the location of the true boundary line between Iowa and Illinois, and that question will only be considered so far as may be necessary to settle the question,

whether any part of the bridge assessed in Illinois was, in fact, located in the State of Iowa at the time the assessment was made. It is a clear proposition, that the assessor had no right to assess any part of the bridge located in the State of Iowa. By the return of the assessor he assumes to have assessed the bridge only to the State line, but as the assessor on his return fails to give the number of feet of approach and bridge assessed, it is impossible to determine from the record whether he crossed over into Iowa or not. He gives the starting-point, but fails to state the number of feet from that point to the State line, as he should have done. There is, however, evidence in the record which shows how far the assessor assessed the property. Cole, the superintendent of appellant, testified that Guthrie, while acting as assessor on the board of review, said that he valued and assessed the bridge to the draw. The witness also stated that there were about 1,813 feet of bridge east of the draw and 700 feet of approach, and there were west of the east end of the draw 380 feet of bridge and 250 feet of approach. There is other evidence in the record tending to prove that the bridge was assessed to the east pier of the draw, and we find nothing contradicting this fact.

In disposing of the case, therefore, we shall take it for granted that the bridge was assessed to the draw. The question then is, whether any portion of the bridge east of the draw was in Iowa; if it was, the assessor exceeded the authority conferred upon him by the statute, as he had no power to assess any property beyond the limits of this State. There is much discussion in the arguments of the respective parties as to the true location of the boundary line between Illinois and Iowa, where the bridge in question is located, across the Mississippi river; but as that question has recently been decided by the Supreme Court of the United States, we shall content ourselves with citing but a few of the many authorities bearing on the question.

In Wheaton on International Law (3d Eng. ed.), sec. 200, the author said: "By the treaty of peace, concluded at Paris in 1763, between France, Spain and Great Britain, the Province of Canada was ceded to Great Britain by France, and that of Florida to the same power by Spain, and the boundary between the French and British possessions in North America was ascertained by a line drawn through the *middle of the river* Mississippi, from its source to the Iberville, and from thence through the latter river and the lakes of Maurepas and Pontchartrain to the sea."

The boundary line thus established between the territories belonging to England and France, as established by the treaty, was the middle of the Mississippi river, and it is clear that a line thus established between two governments would be the middle of the main channel or channel of commerce, so that each government might have a free and unobstructed navigation of the river. After peace had been established between the United States and England, the territory lying on the east of the Mississippi river passed into the hands of the United States and that on the west remained in the hands of France, the boundary line remaining the same as before.

The act of Congress of April 18, 1818, authorizing the people of Illinois to form a constitution, after defining the northern boundary, declared as follows: "Thence west to the middle of the Mississippi river, and thence down along the middle of that river to its confluence with the Ohio river." (1 Star. & Curt., p. 50.)

The same language as respects the boundary has been preserved in the Constitutions of the State of 1818, 1848 and 1870. (Id., pp. 55, 68, 99.)

The Enabling act for Iowa, passed in 1848 (5 U. S. Stat., p. 742) fixes the eastern boundary of the State as follows: "Beginning at the mouth of the Des Moines river, at the middle of the Mississippi, thence by the middle of the channel of that river to a parallel of latitude," etc.

The Enabling act for the admission of Wisconsin, enacted in 1846, 9 U. S. Statute, 56, gives the western boundary of the State as follows: "Thence down the center of the main channel of the Mississippi river to the northwest corner of the State of Illinois."

Where the middle of a navigable river becomes the boundary line between two States, as was the case with Illinois and Iowa, the middle of the current or channel will be regarded as the boundary line.

Thus Wheaton, sec. 192, says: "Where a navigable river forms the boundary of coterminous States, the middle of the channel, or *thalweg,* is generally taken as the line of separation between the two States, the presumption of law being that the right of navigation is common to both; but this presumption may be destroyed by actual proof of prior occupancy and long undisturbed possession, giving to one of the riparian proprietors the exclusive title to the entire river."

In Creasy on International Law, sec. 231, it is said: "It has been stated that where a navigable river separates neighboring States, the *thalweg,* or middle of the navigable channel, forms the line of separation. Formerly a line, drawn along the middle of the water, *medium filum aquæ,* was regarded as the boundary line, and still will be regarded *prima facie* as the boundary line, except as to those parts of the river as to which it can be proved that the vessels which navigate those parts keep their course habitually along some channel different from the *medium filum.* When this is the case, the middle of the channel of traffic is now considered to be the line of demarcation."

See, also, *Buttenuth* v. *St. Louis Bridge Co.,* 123 Ill. 535, where it is held that the middle of the main channel of a river between States will be regarded as the boundary line. In *St. Louis* v. *Rutz,* 138 U. S. 226, it is said: "The Enabling act of April 18, 1818, 3 Stat., 429, sec. 2, under which Illinois was organized as a State and admitted

into the Union, made 'the middle of the Mississippi river' the western boundary of the State. The Enabling act of March 6, 1820, 3 Stat., sec 2, under which Missouri was organized as a State and admitted into the Union, made the 'middle of the main channel of the Mississippi river' the eastern boundary of Missouri, so far as its boundary line was coterminous with the western boundary of Illinois. It has been held by the Supreme Court of Illinois, *Buttenuth* v. *St. Louis Bridge Co.*, 123 Ill. 535, that these two Enabling acts are to be construed as *in pari materia*, and that the common boundary line between Missouri and Illinois is the 'middle of the main channel of the Mississippi river.' The 'middle of the main channel of the Mississippi' has been constantly treated as the eastern boundary of the State of Missouri. *Jones* v. *Soulard*, 24 How. 41; *The Schools* v. *Risley*, 10 Wall. 91.''

The question here involved was before the Supreme Court of the United States in *The State of Iowa* v. *The State of Illinois*, at the last October term of the court, and after a review of the authorities bearing on the question the court, among others things, said: ''That the true line in navigable rivers, between the States of the Union, which separates the jurisdiction of one from the other, is the middle of the main channel of the river. Thus the jurisdiction of each State extends to the thread of the stream, that is, the middle channel, and, if there be several channels, to the middle of the principal one, or rather the one usually followed.'' Under the authorities, we think it is plain that the boundary line between Iowa and Illinois, where the bridge of appellant is constructed, is the middle of the main channel of the river; in other words, the thread of the stream. As has been seen, the assessor assessed the bridge to the draw, and the next question to be determined is whether the draw was located in the center of the main channel of the river. Upon this point the appellant called three or four witnesses, who had been acquainted with the channel of the

river at the point in question for a number of years, men who had been pilots on the river, and these witnesses testify that the main channel of the river was east of the draw from one hundred to one hundred and fifty yards. If this testimony was correct, and it was not, as we understand the evidence, contradicted, the assessor assessed from three hundred to four hundred and fifty feet of the bridge in Hancock county, which was located in Iowa.

We now come to the second error relied upon: Was the property described by the assessor as required by law? Sec. 299 of the revenue law provides that all bridge structures across any navigable stream, forming the boundary line between the State of Illinois and any other State, shall be assessed by the assessor in the county or town where located, as real estate. That the assessor shall give in his description the quarter section, section, township and range in which the bridge is located, together with the metes and bounds of the ground occupied by such bridge, and the approaches thereto from the end on the Illinois shore to the center of the main channel of the stream crossed by the same. Under this section of the statute it was the duty of the assessor to state the length of the bridge and approach assessed. Had this course been pursued, as the statute required, after the center of the stream was once determined, there could be no uncertainty in regard to the fact whether the assessor had assessed property in Illinois which was located in Iowa.

The next question to be considered is, whether the property was fraudulently assessed at more than its fair cash value. Whether the property was assessed more or less than it should have been, or more or less than other like property in the county, is unimportant. The assessor is an officer provided for by the legislature, whose duty it is to fix the valuation of property in his town, in order that all property may bear its just proportion of the burden of taxation. In the discharge of his duty the assessor is re-

quired to exercise his best judgment in placing a valuation on property, and when his judgment has been honestly exercised, and he has proceeded on a correct basis, courts can not review the assessment. *Spencer & Gardner* v. *The People*, 68 Ill. 510. Boards of review have been provided, where, upon proper application, changes may be made; but unless the property has been fraudulently assessed more than its fair cash value, courts can not interfere with the action of the assessor. Here the property was assessed by the assessor at $95,000, and it is said the amount is so grossly excessive as to amount to fraud. There is no evidence in the record that the assessor was actuated by any wrong or impure motives in assessing this property; he may have made a mistake and assessed the property higher than it should have been assessed, but the mistake was a mere error of judgment, which can not be reviewed and rectified on an application for judgment against the property assessed.

From the evidence found in the record, we are inclined to the opinion that, under the rule adopted in the township of assessing property at one-third of its cash value, the bridge was assessed more in proportion to its value than other property in the township. But the over-valuation was a mistake in judgment, which can not be availed of in this proceeding.

. For the error indicated the judgment will be reversed and the cause remanded.     *Judgment reversed.*