(No. 19530.— )

THE HERMAN H. HETTLER LUMBER COMPANY, Appellant,
*vs.* THE COUNTY OF COOK, Appellee.

*Opinion filed October 19, 1929—Rehearing denied Dec. 7, 1929.*

WILLIAM C. WERMUTH, and EDWARD L. HOYER, for appellant.

JOHN A. SWANSON, State's Attorney, and LOUIS H. GEIMAN, (HAYDEN N. BELL, of counsel,) for appellee.

Mr. Justice DeYoung delivered the opinion of the court:

The Herman H. Hettler Lumber Company, a corporation, brought an action of assumpsit in the superior court of Cook county against the county of Cook to recover certain taxes levied on real estate and paid by the plaintiff. The defendant filed a plea of non assumpsit. The cause was submitted to the court without a jury upon certain stipulations of fact and other evidence. Judgment was rendered for the defendant, and the plaintiff prosecutes this appeal.

Lots 3 and 4 in Snow Estate subdivision, in the southwest quarter of section 30, township 40 north, range 14 east of the third principal meridian, in the city of Chicago, are bounded on the north and east by the north branch of the Chicago river. As originally laid out, lot 3 contained 451,280 and lot 4 435,600 square feet. In 1898 the city condemned a portion of each of the two lots for the purpose of straightening the river, and in consequence the areas of the lots were reduced to 350,374 and 296,458 square feet, respectively. After the river was straightened the board of assessors continued to fix the valuations of the lots upon the bases of their original areas. Appellant, the Herman H. Hettler Lumber Company, acquired the title to the lots in 1918 and thereafter voluntarily paid the taxes extended upon such valuations. The tax books and the tax bills showed the legal descriptions of the lots or parcels of land assessed but they did not give their areas or dimensions. In 1927 appellant filed a complaint with the board of review concerning the assessment on the lots, and at that time a clerk in the office of the board discovered that the board of assessors had made the excess area assessments. The sums by which the taxes on the lots were increased by reason of the excess areas assessed were as follows: For 1919, $1801.31; for 1920, $1871.88; for 1921, $2567.54; for

1922, $2691.88; for 1923, $2912.97; for 1924, $3082.20; for 1925, $3305.44, and for 1926, $3319.85. It is these sums, aggregating $21,553.07, with interest from their respective dates of payment, which the appellant seeks to recover.

Appellant's contention for a reversal of the judgment is that the excess payments were made under a mutual mistake of fact and hence that they may be recovered in an action of assumpsit. In considering actions for the recovery of taxes paid, Judge Cooley, in his work on Taxation, (4th ed. sec. 1276, pp. 2552-2554), says: "The town, village, city or county for which a tax has been levied and collected may, under some circumstances, be liable to an action at the suit of parties from whom the tax has been exacted. The case, however, must be exceptional and the circumstances such as to render re-payment equitable. In general, an action can only be maintained when the following conditions are found to concur: (1) The tax must have been illegal and void, and not merely irregular. (2) It must have been paid under compulsion or the legal equivalent. (3) It must have been paid over by the collecting officer and have been received to the use of the municipality." Judge Dillon also finds the same conditions essential to recovery. He says: "Actions against a municipal corporation to recover back money upon the ground of the illegality of the tax or assessment are, upon principle and the weight of authority, maintainable when, and in general only when, if there be no statute enlarging the liability, the following requisites co-exist: (1) The authority to levy the tax, or to levy it upon the property in question, must be wholly wanting or the tax itself wholly unauthorized, in which cases the assessment is not simply irregular but absolutely void. (2) The money sued for must have been actually received by the defendant corporation and received by it for its own use, and not as an agent or instrument to assess and collect money for the benefit of the State or other public corpora-

tion or person. (3) The payment by the plaintiff must have been made upon compulsion, as, for example, to prevent the immediate seizure of his goods or the arrest of the person, and not voluntarily. Unless these conditions concur, payment under protest will not, without statutory aid, give a right of recovery." (4 Dillon on Mun. Corp.— 5th ed.—sec. 1617, pp. 2825, 2826).

Appellant's complaint is that the areas considered by the board of assessors in fixing the successive valuations of its lots exceeded the actual areas of those lots. The valuations of each lot were made in gross. The taxes were extended upon those valuations, and there is no contention that the taxes were not levied for lawful purposes. The objection is not that there was a want of power or authority to levy the taxes, but merely that the valuations, by reason of the assessors' error in respect of the areas of the lots, were excessive.

Section 1 of article 9 of the constitution requires the value of property for taxation "to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." Under this constitutional provision the courts, in the absence of fraud, have no power to review or determine the valuation of property fixed by the proper officers for purposes of taxation. (*Hulbert* v. *People*, 189 Ill. 114; *Burton Stock Car Co.* v. *Traeger*, 187 id. 9; *Keokuk Bridge Co.* v. *People*, 185 id. 276; *Republic Life Ins. Co.* v. *Pollak*, 75 id. 292; *Spencer & Gardner* v. *People*, 68 id. 510). By the Revenue act of 1898 the power to value property for purposes of assessment, in counties having a population of two hundred fifty thousand, is vested, in the first instance, in the board of assessors, and later, upon review, in the board of review. Section 23 of the act (Cahill's Stat. 1927, p. 2128; Smith's Stat. 1927, p. 2303) provides that the board of assessors shall meet on the first Monday of June in each year for the purpose of revising the assessment of

real property, and that at such meeting the board, either upon the application of a tax-payer or upon its own motion, shall revise and correct the assessment as shall appear to it to be just. By section 34 the board of review is required to meet on or before the third Monday in June of each year for the purpose of revising the assessment of property. The fourth paragraph of section 35 provides that on complaint in writing that any property is incorrectly assessed, the board of review shall review the assessment and correct it, as shall appear to be just. For an excessive or unequal assessment, where the complaint is not fraud but an error of judgment merely, the sole remedy is an application for an abatement to such statutory agencies as have been provided for hearing it. (*Hulbert* v. *People, supra; Keokuk Bridge Co.* v. *People,* 145 Ill. 596; *Buttenuth* v. *St. Louis Bridge Co.* 123 id. 535; *People* v. *Lots in Ashley,* 122 id. 297; *Humphreys* v. *Nelson,* 115 id. 45). Appellant was in possession of its property, and its opportunity to ascertain the actual area of each of its lots was equal, if not superior, to that of the board of assessors. Yet it made no application to that board for the revision and correction of the assessment, nor did it complain to the board of review, prior to 1927, that its property had been assessed at too high a figure. When that complaint was made all the taxes which it now asserts were excessive had been levied and collected. There is no charge that the board of assessors was guilty of fraud in making any of the successive valuations upon the lots, and appellant having failed to avail itself of its statutory remedies, cannot now have recourse to an action at law. If actions such as the present one are maintainable, the power of valuing property for purposes of taxation will be transferred to courts of justice. That power the General Assembly, in compliance with the constitutional mandate, has vested in other agencies exclusively.

The second condition essential to a recovery in an action of this character, as enumerated by Judge Cooley, namely,

that the tax must have been paid under compulsion, is also wanting in the instant case. · There is no pretense that the taxes, a portion of which for each of the years in question appellant now seeks to recover, were paid under compulsion. It is conceded that all of these taxes were voluntarily paid.

The action of assumpsit, when invoked to recover a tax paid, has as its bases not only that the tax is void and that the plaintiff paid it under compulsion, but also that the municipal corporation into whose treasury the money has passed, in equity and good conscience ought not to retain it. (*Lincoln* v. *City of Worcester,* 62 Mass. 55; *Dewey* v. *Supervisors of Niagara County,* 62 N. Y. 294). The taxes here involved were collected by the county collector, and in the performance of his duty he made distribution of the money among the State, county, city and other tax-levying authorities. The appellee received only a small portion, unascertainable from the evidence, of the money which the appellant seeks to recover in this action. A county which has collected general taxes for itself and the State, cities, towns, villages, school districts and the like, is not liable for those taxes which it has paid over to the public corporations or authorities which levied them. (*Commonwealth of Kentucky, to use of Devoe* v. *Boske,* 99 S. W. (Ky.) 316; *Price* v. *Lancaster County,* 18 Neb. 199; *Meacham* v. *Town of Newport,* 70 Vt. 264). Obviously, the appellee cannot be held liable in an action of this character, equitable in its nature, to refund what it has never received. With respect to the undetermined portion which passed to the county the taxes were not void, nor was payment made under compulsion, and the absence of either of these conditions is sufficient to preclude recovery.

The judgment of the superior court is affirmed.

*Judgment affirmed.*