## AMERICAN MUT. LIABILITY INS. CO. v. McDONOUGH.

No. 4718.

Circuit Court of Appeals, Seventh Circuit.

Oct. 8, 1932.

Roy D. Keehn, Morris Schaeffer, and W. M. Keeley, all of Chicago, Ill., for appellant.

John A. Swanson, State's Atty., and John E. Pedderson and Louis H. Geiman, Asst. State's Attys., all of Chicago, Ill. (Thomas D. Nash and Hayden N. Bell, both of Chicago, Ill., of counsel), for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge (after stating the facts as above).

The question presented by this appeal is whether the facts pleaded in the bill present a question for equitable cognizance by a federal court.

Appellant's contention is that the trial court had federal court jurisdiction by reason of diversity of citizenship of the parties, and on the ground of appellee's violation of appellant's right to the constitutional

guaranty of due process and of equal protection of the law. Its further contention is that the allegations of the amended bill are sufficient to avoid a dismissal for lack of equity.

■ Since appellant asserted a claim arising under the Federal Constitution, the District Court had federal jurisdiction for that reason, as well as upon the ground of diversity of citizenship. Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 124, 42 S. Ct. 207, 66 L. Ed. 496.

■■ Although the present suit arises under the Constitution, and the jurisdictional amount is involved and there is diversity of citizenship, it cannot be maintained if it is not within the equity jurisdiction or cognizance of the District Court. The want of equity jurisdiction, if obvious, may and should be objected to by the court of its own motion. Matthews et al. v. Rodgers et al., 284 U. S. 521, 52 S. Ct. 217, 219, 76 L. Ed. 447. There the objection to the equity jurisdiction of the District Court was not only suggested by the court, but was properly raised by appellant's answer.

Before trial the District Court suggested its lack of jurisdiction, by which it undoubtedly meant equity jurisdiction, and heard argument of counsel thereon. Later the court filed its written opinion, which was adverse to appellant, and stated therein that the bill would be dismissed for want of jurisdiction, and again the court unquestionably meant equitable jurisdiction. The decree of dismissal, however, which followed the opinion, states that the bill of complaint is dismissed for want of equity. In this the court not only recognized but exercised federal jurisdiction, and held, in effect, that under the facts pleaded in the bill there was no basis for the contention that appellant's rights under the "due process" and "equal protection" clauses of the Federal Constitution had been or were about to be violated. This, in effect, was a ruling that the court did not have equitable jurisdiction of the subject-matter.

Appellant does not claim that the taxing laws of Illinois are violative of taxpayers' rights; but its contention is that the state's taxing officers have violated and are continuing to violate the Illinois taxing laws with respect to the taxation of appellant's real property, and as a result thereof its federal constitutional rights are and will be violated.

The Constitution of Illinois provides that all property, real and personal, shall be taxed "so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." Article 9, § 1, Illinois Constitution.

In carrying into effect that provision, the Legislature of Illinois has enacted certain revenue laws, the purport of which, so far as they affect the question before us, is as follows:

In counties of 250,000 or more inhabitants, of which Cook county is one, a board of assessors, consisting of five persons, is elected, and it is charged with the duty of assessing both real and personal property. Cahill's Rev. Ill. Stats., par. 314, c. 120. Both real and personal property are required to be assessed at its fair cash value. Paragraph 329, c. 120.

Quadrennially there is a general assessment of real property, and only changes, additions and improvements are assessed between quadrennial years. Paragraph 323, c. 120.

The assessment books compiled by the board of assessors are returned to the board of review, consisting of three members, which last-named board has powers, among others—

1. To assess all unassessed and omitted property.

2. On taxpayer's written complaint that his property is incorrectly assessed, to hear the complaint and review and correct the assessment.

3. Of its own motion to increase, reduce, or otherwise adjust the assessment of any individual, on real property or personalty, and make such changes in the valuation as may be just.

4. To have full power over assessments to make a just assessment. Paragraph 346, c. 120.

The Illinois statutes also provide for a State Tax Commission, and among its powers it may order a reassessment by the board of assessors for any year of all or any class of the taxable property of a county. In case such a reassessment is ordered, the tax commission is required to fix the time and place of the meeting of the board of review for the purpose of revising, correcting and equalizing such reassessment. The reassessment, when made and completed, is substituted for the original assessment against which taxes for that year are levied and extended. Paragraphs 117–121, c. 120.

The assessment books, as finally compiled by the board of review and certified by it, are the valuations against which taxes are extended, and after the taxes are extended by the county clerk the books are certified to the collector under a warrant directing him to collect the amounts therein shown. If the tax against real property is not paid, it is returned to the county treasurer, as ex officio

562

county collector, as delinquent, who, to enforce the collection, is required to apply to the county court for judgment against such delinquent lands or lots, of which notice must be given. Paragraphs 201–208, c. 120.

The owner of real estate in such suit may appear in the county court and object to the entry of judgment, in which case "the court shall hear and determine the matter in a summary manner, without pleadings, and shall pronounce judgment as the right of the case may be. The court shall give judgment for such taxes * * * as shall appear to be due, and such judgment shall be considered as a several judgment against each tract or lot * * * and the court shall direct the clerk to make out and enter an order for the sale of such real property against which judgment is given." Paragraph 209, c. 120.

From the judgment of the county court an appeal may be taken to the Supreme Court. If it is desired that the appeal shall operate as a supersedeas, the taxpayer must deposit with the county collector the amount of the judgment and costs. If the judgment is affirmed, the amount deposited is applied toward the payment of the judgment. If the judgment is reversed, the deposit is returned to taxpayer. Paragraph 210, c. 120.

In passing upon the question before us the trial court relied largely upon Keokuk & Hamilton Bridge Co. v. Salm, supra. In that case complainant, an Illinois corporation, owned a bridge across the Mississippi river. That part of it which lies within Illinois was assessed for taxation as real estate and was valued at $100,000. To prevent collection of the tax the company brought a suit in the federal court for southern Illinois, for an injunction against the county treasurer and other state officials. It was claimed that the tax was void because the property was deliberately assessed at 150 per cent. of its actual value, whereas the property of other corporations and individuals was assessed at only 40 per cent. of its value; and that thus the company was deprived of property without due process of law and was denied equal protection of the laws, in violation of the Fourteenth Amendment. A motion to dismiss was sustained by the District Court on the ground that complainant had a plain, adequate, and complete remedy at law.

Mr. Justice Brandeis, speaking for the court, said: "Discrimination in taxation effected by systematic inequality of assessment may violate the Fourteenth Amendment. Greene v. Louisville & Interurban R. Co., 244 U. S. 499, 502, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. But the bill failed to show that plaintiff was being deprived of property without due process of law or was being denied equal protection of the laws, or that there was any danger that it would be. Compare Wells, Fargo & Co. v. Nevada, 248 U. S. 165, 168, 39 S. Ct. 62, 63 L. Ed. 190. The law of Illinois affords ample opportunity to question the amount and the validity of an assessment both before administrative tribunals and in its courts. * * * Every * * * assessment made by the county assessors is subject to revision by them. Sections 319, 320. [Hurd's Rev. Stat. (Ill.) 1919, c. 120.] Moreover, upon complaint in writing that an assessment is incorrect, a board of review is required to give a hearing, and to correct the assessment 'as shall appear to be just.' Section 329; Standard Oil Co. v. Magee, 191 Ill. 84, 60 N. E. 802. Payment of taxes as finally assessed and extended against real estate is enforced, in the first instance, not by distraint or levy, but by legal proceedings. Sections 185–193. An application is made by the collector to the county court for judgment against the property. Compare Keokuk & Hamilton Bridge Co. v. People, 145 Ill. 596, 34 N. E. 482; Id., 161 Ill. 514, 44 N. E. 206; Id., 176 Ill. 267, 52 N. E. 117. The proceeding in the county court is a civil suit for the collection of a debt. People v. St. Louis Merchants' Bridge Co., 282 Ill. 408, 118 N. E. 733. The owner may appear and defend on any legal ground; among others, that the assessment was deliberately or fraudulently discriminatory and that hence the tax is void. People v. Keokuk & Hamilton Bridge Co., 287 Ill. 246, 122 N. E. 467; Id., 295 Ill. 176, 129 N. E. 87. From the judgment of the county court an appeal may be taken to the Supreme Court of the state upon giving a bond to pay the amount of the assessment and costs; and the appeal will operate as a supersedeas if the appellant deposits with the county collector an amount of money equal to the amount of the judgment and costs. If upon final hearing judgment for sale of the lands for taxes is refused, the deposit is returned by the collector to the appellant. Section 192. Moreover, where it is claimed that a tax is void because of overvaluation which is fraudulently discriminatory, the courts of the state will grant relief in equity, if the plaintiff has sought correction from the board of review and failed to secure redress. Sanitary District v. Young, 285 Ill. 351, 367, 120 N. E. 818. Here the alleged invalidity consists wholly in discriminatory overvaluation; and, so far as appears, appellant did not even apply to the board of review to correct the assessment. There is thus no basis for the contention that resort to a suit such as

this was necessary to prevent, either a sale for an illegal tax creating a cloud upon title, or multiplicity of suits to recover back the tax, or other irreparable injury. See Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288; Ohio Tax Cases, 232 U. S. 576, 587, 34 S. Ct. 372, 58 L. Ed. 737; Farncomb v. [City and County] Denver, 252 U. S. 7, 40 S. Ct. 271, 64 L. Ed. 424."

As an additional reason for affirming the trial court's action in dismissing the bill, the Supreme Court said there was no averment of payment or tender of the amount of taxes confessedly due, and no offer to pay such amount as the court might find to be justly and equitably due.

In the Keokuk Case, complainant had not applied to the board of review to correct the assessment, nor had it tendered payment of the amount confessedly due, or offered to pay what the court might find to be justly and equitably due; while in the instant case appellant had applied to the board of review for relief and alleged payment of all that was due, and offered to pay what the court might find to be due.

■ We are convinced, however, that, in view of the holding in the Keokuk Case, those additional allegations in the instant bill are not sufficient to warrant the relief which appellant is seeking in this court. If indeed it be conceded that appellant's written objections to its assessments were unlawfully ignored and not acted upon by the board of review, that would only give assurance that no judgment could be rendered against its property for the taxes thus extended when the matter should come before the Illinois court for adjudication, as come it must. Hence, as stated in the Keokuk Case, there is no basis for the contention that resort to a suit such as this was necessary to prevent either a sale for an illegal tax creating a cloud upon title, or multiplicity of suits to recover back the tax or other irreparable injury. We are not permitted to indulge the presumption that the Illinois courts will permit the taxing officers of that state to violate the plain requirements of the Illinois statutes; but, on the other hand, we must indulge in the contrary presumption.

Appellant's allegation of payment and offer to pay what may be found to be justly and equitably due will not render valid the bill which is bad for other reasons. The Keokuk Case holds that the absence of such allegation is merely an additional reason for holding the bill bad.

■ It is further contended by appellant that to follow the Keokuk Case is to require appellant to resort to and rely upon the Illinois courts for relief, and is to defeat federal jurisdiction of its equitable action by reason of the fact that it has an adequate legal remedy in the Illinois courts. This, it says, is unlawful, because the only legal remedy which will defeat federal jurisdiction of an equitable action must be a federal legal remedy. With this last statement of the law we are in accord. Smyth v. Ames, 169 U. S. 466; 18 S. Ct. 418, 42 L. Ed. 819; Chicago, B. & Q. R. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878; Risty v. Chicago, R. I. & Pac. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641. It may be conceded that appellant has no federal legal remedy to right its grievances, but we think the Keokuk Case was not decided by the Supreme Court on the theory that there was no federal jurisdiction because complainant in that case had an adequate legal remedy. Indeed, the Supreme Court, on page 124 of the opinion in 258 U. S., 42 S. Ct. 207, 66 L. Ed. 496, holds that the District Court had federal jurisdiction. It is true that the District Court in that case dismissed the bill on a motion which assigned as a reason for dismissal the fact that complainant had a plain, adequate and complete remedy at law; but the Supreme Court sustained the trial court's ruling in dismissing the bill for the reason, among others, that the bill failed to show that plaintiff was being deprived of its property without due process of law, or was being denied equal protection of the laws, or that there was any danger that it would be. Hence the court said there was no basis for the contention that resort to such a suit was necessary to prevent either a sale for an illegal tax creating a cloud upon title, or multiplicity of suits to recover back the tax, or other irreparable injury. Therefore the ruling of the Supreme Court was that, while there was federal jurisdiction, there was lack of facts sufficient to constitute a valid cause of action in equity; which, in effect, was that there was a lack of equitable jurisdiction.

■ By failing to present its objections to the county court upon application by the collector for judgment, as provided by the Illinois statutes, c. 120, pars. 201–209, appellant failed to exhaust its administrative remedy before applying to the District Court for injunctive relief. Appellant, however, contends that such action before the court constitutes a judicial remedy, and that its administrative remedies were exhausted by the nonaction of the board of review. We think

appellant's administrative remedy cannot be considered exhausted in any event until there was action by the board of review, whether that action be voluntary or involuntary. But if appellant be not required to enforce action by the board of review, still its administrative remedy is not exhausted until the action of the county court shall have become final. Porter, Auditor, v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 619, 76 L. Ed. 1226. In that case appellee's permit to transact business in Montana had been revoked by appellant, who was ex officio investment commissioner of that state. Appellant was awarded a decree by a specially constituted District Court enjoining the enforcement of the commissioner's order. The decree was reversed, and Mr. Justice Roberts, speaking for the court, said: "We are of opinion that the appellee failed to exhaust its administrative remedy before applying to the District Court for injunctive relief. The granting and revocation of permits is an exercise by the appellant of delegated legislative power. Section 4038 of the [Montana] Code (supra) confers on any interested person dissatisfied with a finding or decision by the commissioner, the right within thirty days to bring an action against him in a state district court to vacate his order and set it aside as unjust or unreasonable, and directs that on the hearing the judge 'may set aside, modify or confirm said * * * decision as the evidence and the rules or (sic) equity may require.' The section confers the right to appeal to the state Supreme Court from the judgment of the trial court. Clearly the function of the state district court under the statutory mandate is not solely judicial, that is, to set aside a decision of the commissioner if arbitrary or unreasonable and hence violative of constitutional rights. The duty is laid on the court to examine the evidence presented and either to set aside or to modify or to affirm the commissioner's order, as the proofs may require. The legislative process remains incomplete until the action of that court shall have become final. Prentis v. Atlantic Coast Line, 211 U. S. 210, 229, 230, 29 S. Ct. 67, 53 L. Ed. 150; Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 444, 450, 451, 36 S. Ct. 637, 60 L. Ed. 1084. And the capacity in which the court acts is none the less administrative because the proceeding is designated as a suit in equity instead of by appeal. Keller v. Potomac Electric Power Co., 261 U. S. 428, 438–442, 43 S. Ct. 445, 67 L. Ed. 731. When the appellee was notified on June 22, 1931, that the rule adopted by the appellant would become effective July 22d of the same year, an action could have been filed in the state court and a hearing had upon all questions of fact and law touching the propriety and legality of the order."

In the instant case appellant, in order to present to the county court the facts and the law upon which it bases its right to relief, was not required by statute to institute proceedings, as was required in the Porter Case; but out of an abundance of precaution the Illinois statutes provided for a hearing, upon appellee's petition and after notice to appellant, at which hearing appellant could present all questions of law and fact touching the propriety and legality of its assessment, and until such hearing was had no lien for such taxes could attach to its property, and until such time appellant's legislative remedy cannot be said to have been exhausted.

In support of appellant's contention that the bill contains facts sufficient to constitute a valid cause of action in equity, it cites Cummings v. Merchants' Nat. Bank of Toledo, 101 U. S. 153, 25 L. Ed. 903; Raymond, Treasurer, v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Greene, Auditor et al. v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; and kindred cases. The Cummings Case, supra, relates to the taxation of bank stock, and arose under the taxing laws of Ohio. Under those laws, instead of having all property subject to taxation valued by one commission or authorized body, there are at least four different bodies acting independently of each other in regard to as many different classes of property in the process of final estimate for taxation. In reference to banks, which are first assessed by the county auditor, there is a state board of equalization, whose function is limited to equalizing throughout the state the valuation of the shares of incorporated banks; and the amount fixed by that board is the final basis of taxing that species of property for state and county purposes. The bank stock in controversy had been valued for taxation at a much larger sum in proportion to its real value than other property, real and personal, in the same city, county and state, under a system adopted and participated in by the taxing officers and the board of equalization, which system was clearly and admittedly in violation of the Ohio taxing laws. Obviously the taxes were, at that time, collected by warrant and distraint, and not as a result of judgment after a hearing in a state court, as is provided in Illinois. In that case the court held that the appropriate mode of re-

lief was to enjoin the collection of the illegal excess, upon payment of the amount of the tax which is equal to that assessed on other property. The Raymond Case, supra, involved the assessment and taxation of corporate property in North Chicago, Cook county, Ill. At that time the state board of equalization was the body that made the original assessments upon such property, and from its decision on valuation there was no appeal. That valuation had been made under a system which clearly denied due process and equal protection of the law. At that time taxes were collected by warrant and distraint, and such warrant had been issued to the collector of the town of North Chicago directing him to collect the taxes. The Greene Case, supra, involved assessments for taxation under the laws of Kentucky, and the Supreme Court held that the courts of the United States, when their jurisdiction is properly invoked, may afford equitable relief against discriminatory taxation, contravening the State Constitution, when the discrimination results from divergent action of different assessing boards whose assessments are not subject to any process of equalization established by the state, and where the diverse results are the outcome of intentional, systematic, and persistent undervaluation by one body of officials, presumably known to and ignored by the other body.

In each of the three cases last referred to the liability, so far as the respective states were concerned, was definitely and irrevocably fixed, and the cloud upon title to the property affected was indeed real and imminent.

In the instant case no such condition exists, and we think the case of Keokuk & Hamilton Bridge Co. v. Salm, supra, is controlling. See Henrietta Mills v. Rutherford County, 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737; Beidler v. Kochersperger, 171 Ill. 563, 49 N. E. 716; Kinley Mfg. Co. v. Kochersperger, 174 Ill. 379, 51 N. E. 648; Sanitary District v. Young, 285 Ill. 351, 120 N. E. 818; Aldrich v. Harding, 340 Ill. 354, 172 N. E. 772; McDonough, County Treasurer, v. Cesar (Ill.) 182 N. E. 448, decided July 26, 1932, (petition for rehearing pending).

As affecting equitable jurisdiction, we think the following quotations are quite applicable:

In Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 428, 53 L. Ed. 796, the court said: "An examination of the decisions of this court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused it to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired."

In Matthews v. Rodgers, supra, the court said:

"Section 16 of the Judiciary Act of 1789, 1 Stat. 82, perpetuated without material change as Rev. Stat. § 723, Jud. Code § 267 (28 U. S. C. § 384, 28 USCA § 384), declares that suits in equity shall not be sustained in the courts of the United States 'in any case where a plain, adequate and complete remedy may be had at law.' The effect of this section, which was but declaratory of the rule in equity, established long before its adoption, is to emphasize the rule and to forbid in terms recourse to the extraordinary remedies of equity where the right asserted may be fully protected at law. See Deweese v. Reinhard, 165 U. S. 386, 389, 17 S. Ct. 340, 41 L. Ed. 757; New York Guaranty Co. v. Memphis Water Co., 107 U. S. 205, 214, 2 S. Ct. 279, 27 L. Ed. 484.

"The reason for this guiding principle is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount, sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. * * * If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved, Jud. Code § 237 (28 USCA § 344), or to his suit at law in the federal courts if the essential elements of federal jurisdiction are present. See Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; Shelton v. Platt, 139 U. S. 591, 11 S. Ct. 646, 35 L. Ed. 273; Dows v. Chicago, 11 Wall. 108, 110, 112, 20 L. Ed. 65."

We do not wish to be understood as holding that the alleged acts of the taxing officers of Illinois are in conformity to the laws of that state with respect to the assessment and taxation of appellant's property, nor that the taxing units affected are entitled to a judgment for those taxes in the Illinois court under the facts pleaded; but we do hold that,

in view of the protective provisions of the Illinois statutes with respect to appellant's grievances, there is no basis for the contention that resort to a/ suit such as this is necessary to prevent either a sale for an illegal tax creating a cloud upon title, or multiplicity of suits to recover back the tax, or other irreparable injury.

Decree affirmed.