(No. 2500—)

BUTLER COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 10, 1937.*

HARRY W. REIHER, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant filed its complaint herein on September 5th, 1934 and seeks to recover the sum of $343.45 which it claims to have paid to the Secretary of State as a franchise tax in excess of the amount which it was legally required to pay under the terms and provisions of The Business Corporation Act of this State.

It appears that claimant filed its annual report with the Secretary of State on February 23d, 1934 in which report it showed a stated capital and paid in surplus in the amount of $2,456,800.04, and showed an authorized capital stock as of the same date as follows, to wit: preferred, 27,700 shares of the par value of $100.00 per share, and 2,300 shares of common of no par value.

The Secretary of State assessed a franchise tax based upon such report, in the amount of $1,500.00, which was paid by claimant on June 26th, 1934.

On June 29th, 1934 claimant filed in the office of Secretary of State certain articles of amendment to its articles of incorporation, said amendment reducing the stated capital and paid in surplus from $3,000,000.00 to $2,313,086.40. The franchise tax on the last mentioned amount would have been $1,156.55 and the difference between such amount and the sum of $1,500.00 which claimant paid on June 26th, 1934 as aforesaid, to wit, the sum of $343.45, is the amount for which claim is filed.

Section 132 of The Business Corporation Act (Bar Association Statute of 1935, ch. 32) provides in part as follows:

"The basis for the annual franchise tax payable by domestic corporations shall be the amount represented in this State, determined in accordance with the provisions of this section, of the sum of its stated capital and paid in surplus on the thirty-first day of December of the preceding calendar year, minus the amount by which the sum of the stated capital and paid in surplus may have been reduced after the thirty-first day of December of the preceding calendar year and prior to the 25th day of June of the current calendar year as disclosed by any report or document filed by it with the Secretary of State."

For claimant to have the benefit of the amendment to its articles of incorporation reducing its stated capital and paid in surplus as above set forth, it was necessary that such articles of amendment be filed in the office of the Secretary of State prior to the 25th day of June, 1934. Such articles of amendment, however, were not filed until June 29th, 1934, and consequently claimant's annual franchise tax was re-

quired to be computed on the basis of the sum of its stated capital and paid in surplus on the 31st day of December, A. D. 1933.

The sum of claimant's stated capital and paid in surplus on December 31st, 1933, as shown by said annual report was $2,456,800.04, and therefore, in the absence of any other showing made in accordance with the statutory requirements, the capital stock tax should have been assessed in the amount of $1,228.40. Claimant therefore paid $271.60 in excess of what it should have paid.

The question for our consideration, therefore, is whether claimant is entitled to a refund of the amount of such excess, under the facts in this case.

Sections 95, 96, 115 and 116 of The Business Corporation Act require every domestic corporation and every foreign corporation authorized to do business in this State to file an annual report with the Secretary of State between the 15th day of January and the last day of February of each year.

Section 143 of said Business Corporation Act provides that:

"Between the first day of March and the fifteenth day of June of each year the Secretary of State shall assess against each corporation, domestic or foreign, required to file an annual report in such year the franchise tax payable by it for the twelve months' period commencing on the first day of July of such year in accordance with the foregoing provisions * * *."

Section 132 hereinbefore quoted, prescribes the basis upon which the franchise tax shall be assessed.

Said Section 143 also provides that the Secretary of State shall:

"mail a written notice to each corporation against which such tax is assessed, addressed to such corporation at its registered office in this State, notifying the corporation (1) of the amount of franchise tax assessed against it for the year next ensuing * * *; (2) that objections, if any, to such assessment will be heard by the officer making the assessment, on or before the twenty-fifth day of June of such year, upon receipt of a request from the corporation; and (3) that such tax * * * shall be payable to the Secretary of State on the first day of July next succeeding the date of the notice"; * * * Failure to receive such notice shall not relieve the corporation of its obligation to pay the tax * * * or invalidate the assessment thereof."

Such section also provides that the Secretary of State shall have power to hear and determine objections to any assessment of franchise tax at any time after such assess-

ment and, after hearing, to change or modify any such assessment.

It is not contended that the Secretary of State did not mail, or that the claimant did not receive the notice required to be mailed by such Secretary under Section 143. Claimant filed no objections with Secretary of State relative to the tax assessed against it, and made no request for a hearing in the matter as required by such section.

Section 2a of an Act entitled "An Act in Relation to the Payment and Disposition of Moneys Received for or on Behalf of the State" (Bar Association Statutes, 1935, ch. 127b, Par. 35,) provides as follows:

"It shall be the duty of every officer, board, commission, commissioner, department, institute, arm or agency, brought within the provisions of this Act by Section 1 hereof to notify the State Treasurer as to money paid to such officer, board, commission, commissioner, department, institute, arm or agency, under protest and the Treasurer shall place such money in a special fund to be known as the protest fund. At the expiration of thirty days from the date of payment the money shall be transferred from the protest fund to the appropriate fund in which it would have been placed had there been payment without protest, unless the party making such payment shall within such period file a bill in chancery and secure a temporary injunction restraining the making of such transfer, in which case such payment shall be held in the protest fund until the final order or decree of the court."

The statutes provided a full and complete remedy for the claimant and it should have taken advantage of the provisions of law enacted for its protection. Having failed to take advantage of the remedies provided by statute, it follows that the payment made by claimant was made voluntarily and without compulsion or duress.

Our courts have uniformly held that where an illegal or excessive tax is paid voluntarily and with a full knowledge of all the facts, it cannot be recovered. *Alton Light & Traction Co.* vs. *Rose,* 117 Ill. App. 83; *Walser* vs. *Board of Education,* 160 Ill. 272; *Yates* vs. *Royal Ins. Co.,* 200 Ill. 202; *Board of Education* vs. *Toennigs,* 287 Ill. 469; *School of Domestic Arts* vs. *Harding,* 331 Ill. 330; *Merchants Trust Co.* vs. *Harvey,* 335 Ill. 284; *Richardson Lubricating Co.* vs. *Kinney,* 337 Ill. 122; *Hettler Lumber Co.* vs. *Cook County,* 336 Ill. 645; *Cooper, Kanaley & Co.* vs. *Gill,* 363 Ill. 418; *American Can Co.* vs. *Gill,* 364 Ill. 254.

It is also uniformly held that where such tax is paid under a mistake of fact, it is not considered as having been voluntarily paid, and may therefore be recovered.

It is also uniformly held that where such tax is paid under a mistake of law, it may not be recovered. Although the foregoing principles of law are firmly established by the decisions, yet the application of such principles to the facts in the particular case is often involved in considerable difficulty.

In this case the Secretary of State made an erroneous assessment; there was no fault on the part of the claimant, but the facts relative to the amount of claimant's stated capital and paid in surplus were as well known to the claimant as they were to the Secretary of State, and both parties were chargeable with a knowledge of the law relative to the amount of the tax to be paid.

In the case of *Alton Light & Traction Co.* vs. *Rose, supra,* the plaintiff tendered to the Secretary of State for filing, two certificates of corporate consolidation, together with a fee of $1.00 for the filing of each certificate. The Secretary of State refused to file the same unless he was paid the sum of $1,045.00, which he contended was the proper filing fee. Plaintiff objected to the payment of such fee, but eventually paid the same and commenced suit to recover the amount so paid, which it claimed to be excessive, and without warranty or authority in law. The court held, however, that the fees were paid voluntarily, without legal duress or compulsion, and therefore were not recoverable.

In the case of *Yates* vs. *Royal Insurance Co., supra,* the plaintiff sued to recover certain taxes which it had paid under the provisions of a law which was thereafter held to be unconstitutional. The court there held that the payment was voluntarily made, without fraud or compulsion, and therefore was not recoverable. In that case the court quoted from Cooley on Taxation, 2d Ed. 810, as follows:

"All payments are supposed to be voluntary until the contrary is made to appear. Nor is the mere fact that a tax is paid unwillingly or with complaint of any legal importance, but there must be in the case some degree of compulsion, to which the taxpayer submits at the time but with notification of some sort equivalent to reservation of rights."

In the case of *Walser* vs. *Board of Education, supra,* the county clerk of Cook County by mistake entered upon the tax collector's book certain real estate as lying and being in School District No. 1, whereas in fact the same was located in District No. 2. The owners of the property had no knowledge of the mistake made by the clerk, and paid the tax as

sessed against their lands, which was substantially in excess of what they should have been required to pay if their lands had been properly assessed. In that case the court, on page 275, said:

"The tax levied by District No. 1, as extended on lands belonging to District No. 2, was an illegal and void tax. That tax was paid by the owners of the property so illegally assessed, voluntarily. The books were open to inspection by the taxpayers, and the means of knowledge existed to learn and know all the facts. Money paid voluntarily by one with knowledge or means of knowledge of all the facts cannot be recovered back.

In the case of *Hettler Lumber Co.* vs. *Cook County, supra,* the plaintiffs owned two lots abutting on the river. The lots as originally laid out contained 886,880 square feet. In 1898 the City of Chicago condemned a portion of each lot for the purpose of straightening the river, and thereby reduced the area of said lots to 646,832 square feet. After such condemnation the board of assessors continued to fix the valuations of such lots upon the basis of their original areas. As the result of such action the plaintiff in the eight years following 1918, paid $21,553.07 in taxes, in excess of what it would have been required to pay if the assessors had made the proper reduction in valuation after the area of the lots had been decreased. Plaintiff sued to recover the amount of such overpayment and interest, on the ground that such payments had been made under a mutual mistake of fact. The court held, however, that the payments were made voluntarily and therefore could not be recovered.

In the case of *Cooper, Kanaley & Co.* vs. *Gill, supra,* plaintiffs' property was improved by a one-story building and the property adjoining on the east was improved by a three-story hotel. By mistake of a clerk in the assessor's office the hotel building was marked on the record card of plaintiff's property. As the result of such mistake, plaintiff's property was assessed more than it should have been, and the taxes paid by it for 1929 and 1930 were $2,001.24 in excess of what it would have been required to pay if such mistake had not been made. The court held that the payments were made voluntarily and could not be recovered, and in discussing the question, used the following language (p. 421):

"Where taxes have been voluntarily paid in full on an over-assessment, due to arriving at a value based on mistake either of fact or judgment or other error on the part of the assessor, and where fraud was not an element in the over-assessment, courts are without jurisdiction to afford relief."

In the case of *American Can Co.* vs. *Gill, supra,* certain tanks had been assessed for general taxation at $2,201.00 and $620.00 respectively. The figures were handled in the assessor's office through a comptometer, and in the operation of the machine, the decimal point was shifted two places to the right, resulting in an entry in the tax books of a valuation on said tanks of $220,100.00 and $62,000.00 respectively, upon which valuations taxes were assessed and paid. Plaintiff sought a refund under the theory of double taxation. The court held that there was no double taxation, and that the taxes had been voluntarily paid and therefore could not be recovered.

The question as to when illegal or excessive tax payments may be recovered, is the subject of an exhaustive annotation in 64 A. L. R., commencing on page 9. The general rule is set forth on page 10, as follows:

"It is a well-settled rule, in the absence of statute, that the right of a party who has paid a tax, local assessment, or license fee, to recover the same back, depends upon whether or not the payment was involuntary. If the payment was voluntary, it cannot be recovered; if it may be deemed involuntary, a recovery may be had."

Under the heading of general rules it is pointed out on page 11 that "the terms 'voluntary' and 'involuntary' when used with reference to payments of taxes, are not applied in their ordinary sense."

Under the heading "Existence and adequacy of other remedy or relief", the annotator, on page 54, says:

"There is a conflict in the authorities on the question whether the existence of another remedy or means of relief will render a payment of taxes voluntary, where the taxpayer neglects to avail himself of such remedy.

"It has frequently been held that the compulsion brought to bear upon the taxpayer must, in order to render his payment involuntary, have been of such a nature that he had no other reasonable means of immediate relief from the same, except by making the payment."

After citing a long list of cases from different jurisdictions, he proceeds (page 55):

"And according to this line of cases, representing, probably, the weight of authority, where the taxpayer has some other legal remedy or protection against the coercive acts of the collecting officer, he is bound to avail himself thereof, and, if he neglects to do so, and pays the tax, such payment is deemed voluntary."

The annotation in 64 A. L. R. 9, is supplemented by a further annotation in 84 A. L. R. 294.

As shown by this annotation, the question before us has been the subject of litigation in practically every State in the Union, and as usual, the views of the several courts are not entirely in harmony. Our own courts are inclined to construe the law strictly, in favor of the taxing body and against the taxpayer.

From the record in this case it appears that claimant made no objection to the tax assessed against it and made no request for a hearing thereon, in accordance with the statute; also that the tax in question was paid without protest, and with a full knowledge of all the facts. Under the decisions of our courts, such payment constituted a voluntary payment within the legal meaning of those words, and therefore the claimant is not entitled to have the same refunded. Award denied. Case dismissed.