**BEAL, Co. Atty., et al. v. MISSOURI PAC. R. CORPORATION IN NEBRASKA.**

No. 11465.

Circuit Court of Appeals, Eighth Circuit.
Jan. 18, 1940.

Rehearing Denied Feb. 12, 1940.

Edwin Vail and H. Emerson Kokjer, Asst. Attys. Gen. (Walter R. Johnson, Atty. Gen., on the brief), for appellants.

G. L. DeLacy, of Omaha, Neb. (J. A. C. Kennedy, Yale C. Holland, E. J. Svoboda, and R. E. Svoboda, all of Omaha, Neb., on the brief), for appellee.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

This was a suit in equity brought by the Missouri Pacific Railroad Corporation in Nebraska, a Delaware corporation, against appellants, who include the Attorney General of the State of Nebraska and certain other law enforcing officers of that state, to enjoin them from certain threatened unlawful acts in the enforcement of the Nebraska Full Train Crew Law as interpreted by such officers. It will be convenient to refer to the parties as they were designated below. Defendants moved to dismiss the suit for want of equity, which motion was denied, whereupon they filed answer.

The Full Train Crew Law of Nebraska requires that all trains of more than five cars shall have a crew consisting of not less than one engineer, one fireman, one conductor, one brakeman and one flagman, and that trains of less than five cars shall have a crew consisting of one engineer, one fireman, one conductor, and one brakeman or flagman. It appears from the allegations and admissions in the pleadings, that plaintiff's passenger trains No. 109 and No. 110 operate with crews consisting of "one man qualified to perform and performing the duties of engineer, one man qualified to perform and performing the duties of fireman, one man qualified to perform and performing the duties of conductor, one man qualified to perform and performing the duties of a flagman, and one man qualified to perform and performing the duties of brakeman, designated 'brakeman and porter' "; that the trainmen performing the duties of "brakeman and porter" on these trains No. 109 and No. 110 were and are colored men who have passed all examinations, mental and physical, and fulfilled all other requirements set up for the qualification of "brakemen" and "flagman"; that the duties of a "brakeman and porter" consist substantially of assisting the conductor in the receiving and discharging of passengers, and, under the direction of the conductor, assisting in protecting the train operation generally; that the "brakeman and porter's" place in and about the train is at or near the middle of the train, unless particular duties call him elsewhere; that when his duties as brakeman permit, he does whatever porter work may be necessary, but this is negligible in volume and does not include cleaning the cars, which work is done at the terminals. That in an original proceeding to enforce this Full Train Crew Law, instituted before the Railway Commission of Nebraska, to compel the Railroad Company to discharge the colored men and hire white men as brakemen, the individual instituting the proceedings testified, among other things, "that the principal cause for this was to not only let the white men get some of these good jobs, but to get rid of the colored men"; that this individual filed a complaint before the Nebraska State Railway Commission, charging the plaintiff Railroad Company with operating its passenger trains No. 109 and No. 110 in violation of the statute, in that the requirement of one brakeman was not complied with, as the trainman who did the brakeman's work was referred to by another designation; that this proceeding was dismissed by the Commission, but on January 20, 1931, the same party again filed a complaint with the Railway Commission, charging a violation of the statute, which complaint was again dismissed by the Commission on March 1, 1932, but in April, 1932, on application of this same party, a rehearing was granted. That at that hearing evidence was offered to the effect that the "brakeman and porter," and each of the members of the train crew, were qualified in every way to discharge the duties of their respective position and the "brakeman and porter" completely performed the duties of the brakeman and when the brakeman's duties permitted he did some porter work. That in its order, the State Railway Commission recited that after investigation of all the testimony, it was of the opinion, and so found, that so far as the safety of the traveling public was concerned the trains in question, No. 109 and No. 110, were adequately manned and were being operated by five employees qualified to perform and performing the duties of one engineer, one fireman, one

conductor, one brakeman, and one flagman; that each one of the five employees of said trains performed regularly one of the duties required by the Full Train Crew Law, and that each employee, in his particular work, had passed the regular examination for said work and was fully qualified to perform the same; that "the Commission's attention was more particularly called to the colored trainman, performing the duties of brakeman and porter. Careful investigation discloses that although this man's race and color disqualify him from holding the position of brakeman, he is capable of performing all of these duties and has passed the same examinations required of one who bears the title of brakeman. The Commission is therefore of the opinion and so finds that so far as public safety is concerned, the trains in question are adequately manned. The Commission is, however, of the opinion that so far as a literal interpretation of the statutes is concerned, trains Nos. 109 and 110 are not operated by employees bearing the titles set forth in Section 74-519, which makes the defendant company liable for criminal prosecution under Section 74-522, C.S. of 1929. Therefore, in view of the fact that this Commission does not have any criminal jurisdiction and in view of the fact that in the Commission's opinion safety for and service to the public are adequately cared for by the crew as we find it to be constituted, the Commission finds that the proper prosecuting authorities should be advised as to the facts determined by the Commission so that prosecution may result if, in the opinion of said prosecuting authorities, a misdemeanor has been committed." That the Commission then ordered the Railroad Company to comply with Section 74-519, C.S. of 1929, as it construed that section, and that the Attorney General be advised that the Railroad Company did and is operating passenger trains over its line in Nebraska with a properly qualified crew, except that "the man qualified to perform the duties of brakeman was not designated and known as brakeman, but was designated and known as trainman"; that the order further recites that the records and files of the Commission are made available to the Attorney General of the state for his use in prosecuting the Railroad Company for violation of the statute. That under plaintiff's contract with the colored brakemen the wage scale is $120 per month, but if plaintiff were required to hire white brakemen in place of the colored brakemen the wage scale under plaintiff's contract with B. of R. T., would approximate $200 per month, and that the substitution of white brakemen in place of the colored brakemen would result in increasing plaintiff's expense in operating its passenger trains under consideration in Nebraska, to the extent of $6,700 per year.

The penalty provided by the Nebraska statute for a violation of this Full Train Crew Law is a fine of not less than $100 nor more than $1,000 for each offense. During one year there would be 1,460 train movements of these trains, No. 109 and No. 110, which, at the maximum possible fine of $1,000, would represent gross fines of $1,460,000 per year.

Following the action of the State Railway Commission in referring the matter to the Attorney General of the State of Nebraska for prosecution, plaintiff brought this suit. The court entered decree on the allegations and admissions of the pleadings, enjoining defendants from instituting or prosecuting criminal or other proceedings against plaintiff, its officers, agents and employees for an alleged violation of Section 74-519 of the Compiled Statutes of Nebraska for 1929, because of the fact that it employed as brakeman a properly trained and qualified colored man or men on its passenger train or trains in Nebraska, designating them as "brakeman and porter," or as "brakeman-porter."

Defendants, in seeking reversal, contend that: (1) The court erred in finding that the employment of a colored brakeman designated as a brakeman and porter, or as a brakeman-porter, or as a porter, as described in the pleadings, was a compliance with the provisions of Section 74-519, Compiled Statutes of Nebraska for 1929, and in entering a decree permanently enjoining the defendants and each of them and their successors in office from instituting and prosecuting criminal or other proceedings against the plaintiff because of the fact that the plaintiff employs as a brakeman a properly trained or qualified colored man, or men, on its passenger train, or trains, designated either as a brakeman and porter, or as a brakeman-porter, or as a porter. (2) Assuming the defendants or any of them to be in error in the construction of the statute, even then a decree of injunction should not have been entered in favor of the plaintiff and against the defendants, for that the statute

is not assailed as in conflict with any provision either of the State or Federal Constitution and equity does not afford jurisdiction to enjoin a threatened criminal prosecution based on a valid statute because of the alleged misconstruction of such statute by administrative state officers. (3) This suit may not be entertained, as it is in reality a suit against a sovereign state by a citizen of another state and is forbidden to be brought by the provisions of the Eleventh Amendment to the Constitution of the United States, U.S.C.A.

Section 74-519, Compiled Statutes of Nebraska for 1929, commonly known as the Full Train Crew Law, so far as here pertinent, provides that, "It shall be unlawful for any railroad company doing business in the State of Nebraska to operate or run over its road or any part thereof, or suffer or permit to be run over its road or any part thereof, outside of the yard limits, any passenger, mail or express train carrying passengers, whose regular equipment consists of more than five cars, with a crew, consisting of less than one engineer, one fireman, one conductor, one brakeman and one flagman; and further provided, passenger trains whose regular equipment consists of five cars or less, may be operated with a crew consisting of one engineer, one fireman, one conductor and one brakeman or flagman."

Section 74-522, Compiled Statutes of Nebraska for 1929, prescribes the penalties for violations of the Full Train Crew Law, and these penalties have already been noted.

█ The statute, passed in the exercise of the State's police power, was designed to promote the safety of passengers and employees of the Railroad Company. It is the contention of plaintiff that it has fully complied with this statute, but that the enforcing officers of the state have misconstrued the statute, and that if enforced according to such misconstruction it would be an unconstitutional invasion of plaintiff's property rights. Plaintiff has equipped its trains with a full crew, complying at least numerically with the provisions of the statute. It has designated one of its crew as a "brakeman and porter," or "brakeman-porter." This man takes exactly the same examinations, mental and physical, required of white brakemen and flagmen, and the Nebraska State Railway Commission has determined, after a careful investigation,

that "so far as public safety is concerned, the trains in question are adequately manned," and that "safety for and service to the public are adequately cared for by the crew." These employees do the work of brakemen to the entire satisfaction of the Railroad Company and to the entire satisfaction of the Nebraska State Railway Commission. The fact that they may do some porter work, if and when their duties as brakemen permit, is not, we think, material. Under the record they are primarily brakemen and perform all the duties of such an employee. The act, as we have observed, is a safety measure, and not one primarily in the interest of any particular employees or class of employees.

Appellants rely strongly upon the decision of the Supreme Court of Pennsylvania in Public Service Commission v. B. & O. R. Co., 260 Pa. 323, 103 A. 724. In that case, a dining car conductor who did not in fact perform the duties of a brakeman, but who might be required by the conductor to act as such, was held not to be a brakeman within the provisions of the act. But the evidence conclusively showed that the dining car conductor had to remain in the dining car and perform all the duties of dining car conductor and had never at any time done any of a brakeman's work nor been called upon to so act. There was confessedly in that case not a full crew as required by the statute. In the instant case, however, the brakeman-porter, fully qualified mentally and physically as a brakeman, performs all the brakeman's work on the trains, and in addition, if and when his duties as brakeman permit, also does some porter work. We think there has been a compliance with both the letter and the spirit of the act.

██ A court of equity has no criminal jurisdiction, and as a general rule will not grant an injunction to stay criminal or quasi-criminal proceedings. It may, however, interpose for the protection of property rights, and if the injurious acts constituting an invasion of property rights will result in irreparable injury, then the court may grant an injunction to restrain the commencement of criminal proceedings based upon an unconstitutional or otherwise invalid statute, and such injunctive relief may be granted where the threatened prosecution is based upon a misinterpretation of a valid law if, at least as so interpreted, the statute would be unconstitu-

tional. Philadelphia Company v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Greene v. Louisville & I. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas. 1917E, 88; Royal Baking Powder Co. v. Emerson, 8 Cir., 270 F. 429; Weyman-Bruton Co. v. Ladd, 8 Cir., 231 F. 898; Ross v. Goodwin, D.C.,N.H., 40 F.2d 532; Chambers v. Bachtel, 5 Cir., 55 F.2d 851; Stuart v. Utility Investing Corp., 3 Cir., 78 F.2d 279; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

It is urged by appellants that a court of equity is without jurisdiction because it is not claimed that the statute is unconstitutional. But the right to injunctive relief against an officer threatening wrongful acts may be invoked whether the officer is acting under an unconstitutional statute or in excess of his authority under a constitutional statute. In this case, plaintiff charges an abuse of power, and as said in Philadelphia Company v. Stimson, supra [223 U.S. 605, 32 S.Ct. 345, 56 L.Ed. 570], "In this, there is no attempt to restrain a court from trying persons charged with crime, or the grand jury from the exercise of its functions, but the injunction binds the defendant not to resort to criminal procedure to enforce illegal demands. * * * Where the officer is proceeding under an unconstitutional act, its invalidity suffices to show that he is without authority, and it is this absence of lawful power and his abuse of authority in imposing or enforcing, in the name of the state, unwarrantable exactions or restrictions, to the irreparable loss of the complainant, which is the basis of the decree. Ex parte Young, 209 U.S. [123] p. 159, 28 S.Ct. 441, 52 L.Ed. [714], 728, 13 L.R.A.,N.S., 932, 14 A. & E.Ann.Cas. 764. And a similar injury may be inflicted, and there may exist ground for equitable relief, when an officer, insisting that he has the warrant of the statute, is transcending its bounds, and thus unlawfully assuming to exercise the power of government against the individual owner, is guilty of an invasion of private property. * * * If the complainant's rights, as against the defendant, were as claimed, it was entitled to adequate protection. And, in such case, the remedy might properly embrace the restraining of unfounded prosecutions."

In Greene v. Louisville & I. R. Co., supra, the court, in discussing the power of a court of equity to grant injunction to restrain an officer from enforcing a statute, said [244 U.S. 499, 37 S.Ct. 677, 61 L.Ed. 1280, Ann.Cas.1917E, 88], "The principle is not confined to the maintenance of suits for restraining the enforcement of statutes which, as enacted by the state legislature, are in themselves unconstitutional."

An enforcement of this statute as construed by the defendants would subject the plaintiff to a multiplicity of prosecutions. There are some 1,460 train movements in a single year, and the maximum possible fine is $1,000 for each conviction, and as each train movement would be a separate offense if operated with a crew in violation of the statute, gross penalties for a single year on these two trains might aggregate nearly one and a half million dollars.

The contention that this suit was one against the state can not be sustained. As said by the Supreme Court in Philadelphia Company v. Stimson, supra, "The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded." A suit to restrain a state officer from acts violative of plaintiff's property rights to his irreparable damage, when the officer is acting in excess of the authority granted by statute, is not a suit against the State.

We conclude that the court properly exercised its equitable jurisdiction in entering the decree appealed from and it is therefore affirmed.